## CARRAWAY v. CARRAWAY.

1. An unrecorded mortgage is good between the parties and as to all
   others, except subsequent creditors or purchasers for valuable con-
   sideration without notice. *Gen. Stat.*, § 1776.
2. An unrecorded mortgage has priority over judgments based upon debts
   contracted prior to the mortgage, but entered thereafter without notice ·
   of the mortgage—they being existing, and not subsequent creditors.
3. The case of *King* v. *Fraser*, 23 *S. C.*, 543, stated, and this case distin-
   guished therefrom.
   MR. JUSTICE McGOWAN, *dissenting.*

Before WALLACE, J., Georgetown, November, 1886.

This action was commenced October 11, 1885. The order
of reference was passed January 29, 1886, and the references
were held during the summer of that year. The Circuit decree
was as follows:

From this state of facts, the only controversy in the case arises. Hirsch claims that notwithstanding the fact that his mortgage has never been recorded, it is good and valid as a mortgage as against debts in existence at the time of its execution, although their holders had no notice of the mortgage. The holders of these claims, which have been put into judgments, stand upon the liens of their judgements.

An elaborate consideration of this issue is rendered unnecessary by the recent case of *King* v. *Fraser*, 23 *S. C.*, 543. This case already takes rank as a leading case in questions arising upon the registry act of 1876 (Gen. Stat., § 1776). In that opinion, at page 565, it is said: "While the lien of a mortgage not recorded in time is in abeyance for the lack of registry, other creditors of the mortgagor may come in and acquire liens upon his property which will take precedence over the mortgage without regard to its date. This is not expressly declared, but results necessarily from the postponement of the lien of the mortgage and the general nature of liens, of which time is the essential thing. So far, therefore, as there may be conflict between liens, there is no obscurity, for as to them it is only necessary to inquire which is the first in the order of time." Again, at page 569, it is said: "An unrecorded mortgage is in no sense a secret lien, nor indeed any lien at all until it is recorded. Up to that time it is precisely as if it had no existence, invalid and unknown to the creditor."

This language settles any controversy as between judgments, no matter what the date of the demands upon which they are obtained, and mortgages recorded after the entry of the judgments, upon the ground that the lien first obtained is prior; and the rule is the same when the mortgage is recorded after the lapse of time provided in the registry act of 1876, *supra*, if the holders of the judgments had no notice of the mortgage when their liens were acquired. If judgments obtained under such circumstances have precedence over mortgages recorded after time, they certainly would have precedence over a mortgage which has never been recorded.

For the reasons above given, it is ordered and decreed, that the report of the referee, as to the order of payments and distri-

·bution of the proceeds of sale to be herein ordered, be confirmed and made the judgment of this court.  *  *  *

*Mr. H. J. Haynsworth*, for appellants.

*Messrs. Walter Hazard* and *Richard Dozier*, contra.

February 1, 1888.  The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.  The action below was primarily for the partition of the real estate of one McG. Carraway, late of Georgetown County, among his heirs at law.  The case was referred to a special referee, under an order requiring him, among other things, to report what *liens* existed upon the lands, with their character and priority.  Quite a number of liens were established against his heirs at law, one or more, to wit:

1.  A mortgage of James F. Carraway, Sidney F. Carraway, McG. Carraway, and Elizabeth Green, to M. J. Hirsch, March 20, 1885, to secure their bond for $900.  *This mortgage was never recorded.*

2.  A judgment in favor of one Mills against James F. Carraway and John G. Carraway, as Carraway & Bro., for $378.27, dated May 14, 1885.

3.  Judgment in favor of Congdon, Hazard & Co. against James F. Carraway, jr., and John G. Carraway, as Carraway & Bro., for $2,340.16, dated November 20, 1885.

4.  A judgment of H. Kaminski & Co. against James F. Carraway, John G. Carraway, McG. Carraway, S. F. Carraway, and Elizabeth Green, for $2,114.10, dated November 20, 1885.

5.  A judgment of Congdon, Hazard & Co. against James F. Carraway, jr., and John G. Carraway, as Carraway & Bro., for $430.70, dated November 20, 1885.

6.  A judgment of Congdon, Hazard & Co. against McG. Carraway for $168.70, dated November 20, 1885.

7.  A judgment of Congdon, Hazard & Co. against McG. Carraway, jr., for $940.05, dated November 20, 1885.

All of these judgments were obtained, as reported by the referee, upon debts contracted before the execution of the mortgage of Hirsch, of which mortgage, however, none of the credi-

tors had notice until June, 1886. The referee held that said judgments were entitled to priority over the Hirsch mortgage. This holding by the referee was affirmed by his honor, Judge Wallace, who heard the case upon exceptions to the referee's report. From this decree Hirsch now appeals upon the following exceptions : "I. Because his honor erred in holding that creditors whose debts were contracted before the execution of the Hirsch mortgage and reduced to judgment after its execution, were subsequent creditors within the meaning of the registry acts. II. Because his honor erred in holding that an unrecorded mortgage of real estate is postponed under the registry acts to a debt contracted before the execution of the mortgage and reduced to judgment after its execution without notice. III. Because his honor erred in holding that the judgments were liens upon the respective interests of the judgment debtors in said real estate prior to that of the mortgage of M. J. Hirsch," &c.

It will be observed that these exceptions, though three in number, and separately stated, raise substantially the same legal question, which is the only question in the case, to wit : whether a judgment obtained on a debt contracted before the execution of an unrecorded mortgage, obtained after the mortgage, and without notice thereof, is entitled to priority over said mortgage.

Inasmuch as this question must be determined by the registry act of 1876, now embodied in section 1776 of the General Statutes, in which the act of 1843 was substantially re-enacted, we do not conceive it to be necessary to consider very fully the numerous decisions of our court under the registration laws of force prior to 1843. There is some apparent conflict in these decisions which it might be difficult to reconcile, and some dissatisfaction expressed with the principle established, but we do not find that it has been at any time held in this State, that an unrecorded mortgage is void as between the parties thereto. On the contrary, a mortgage properly executed has been always held valid as between the parties and all others having knowledge of its execution, whether recorded or not. And in several cases the very question involved here, to wit : whether a subsequently entered judgment should take priority over an unrecorded mortgage was adjudged adversely to the judgment. See *Ash* v. *Ash,*

1 *Bay,* 306; *Smith & Ravenel* v. *Smith,* 1 *McCord Ch.,* 148; *Barnwell* v. *Porteus,* 2 *Hill Ch.,* 221; *Steele* v. *Mansell,* 6 *Rich.,* 442; *Ashe* v. *Livingston,* 2 *Bay,* 80.

A mortgage, then, being valid between the parties, and having a lien upon the land embraced therein, capable of being enforced even against a subsequently entered judgment, whether recorded or not, up to the act of 1843 (now section 1776 of General Statutes), the question arises, has any change been made in this respect by said subsequent acts, 1843, and section 1776 of General Statutes? Section 1776 of General Statutes is substantially, as we have said, a re-enactment of the act of 1843, with some amendment. We need, then, go no further back than this section. It provides: "That all deeds of conveyance of land, all deeds of trust, &c., all mortgages or instruments in writing in the nature of mortgages of any property, real or personal, * * * shall be valid so as to affect, from the time of such delivery or execution, the rights of subsequent creditors or purchasers for valuable consideration without notice, only when recorded within forty days from the time of such delivery and execution," &c.

Now, what is the meaning and intent of this section? This does not seem to us to be at all doubtful or uncertain. It means precisely what the language in which it is couched indicates and declares. And it declares that the instruments mentioned, if unrecorded within forty days after delivery or execution, shall be void as to subsequent creditors and purchasers. To this extent it goes, and no further. It does not require them to be recorded to make them valid generally, but it impliedly admits their general validity, with the exception that as to certain parties, to wit, subsequent creditors and purchasers without notice, they shall be invalid unless recorded within the prescribed time. In other words, that all such papers are valid and binding, having all the effect which they purport to have, with the proviso, that they shall not have such effect as to subsequent creditors and purchasers without notice, unless recorded as required by the act.

This, then, being the only interpretation of which the act seems to be susceptible, the matter before us is resolved into the question, whether or not the judgment creditors herein are subsequent creditors. It is admitted that the debts upon which the

judgments were obtained were, each and all, contracted before the execution of the Hirsch mortgage. It cannot be said, then, that they were subsequent creditors, unless the entry of the judgments made them creditors, which will hardly be claimed. A judgment is the determination of one's rights upon a cause of action which existed before the adjudication, and although obtained after the cause of action arose, it reflects back and establishes the right as of the date of its inception, and having established such right, it affords the means of enforcing redress for the violation thereof. A judgment, therefore, obtained after the execution of a mortgage upon a debt contracted before its execution, cannot be said to be a subsequent debt, in the sense of the language of the act.

Does it come within the intent or spirit of the act? The plain purpose of the act of 1843, as was said by Chancellor Carroll in *Williams* v. *Beard* (1 *S. C.*, 313), Circuit decision, "was to guard against loss and injury to subsequent creditors and purchasers from their dealing with the mortgagor, under the delusion that he retained the absolute and unencumbered ownership of the property mortgaged." This purpose had no reference to existing creditors, nor did the act intend to interfere in any way with the right of a debtor to lawfully incumber his property for the payment of his debts, or with the view to raise money as against existing creditors. All of the judgment creditors here were existing creditors at the time the Hirsch mortgage was executed and delivered, and we cannot see how that mortgage can be defeated, unless it is vulnerable upon grounds other than that it was not recorded within the forty days prescribed by the act. The judgment creditors here not being subsequent creditors, either in the sense of the terms used in the act, or in its purpose or intent, we think it was error on the part of the Circuit Judge to give priority to the judgments in question.

It may be true that it would be promotive of the interests of commerce, and of the safe and uncomplicated sale and transfer of property, that all liens and transfers should be spread upon some public record, or else to be absolutely void, but we do not think that it is within the province of the judiciary to enact such a law. On the contrary, we must follow the law as established and

enacted by the legislative department of the State. We think the recent registry act of 1876, General Statutes, section 1776, is the act which governs the question involved here, and from our interpretation, given above, we think the conclusion is inevitable, that the failure to record a mortgage affects its validity only as to subsequent creditors and purchasers, such being in the terms of the act the only class that can invoke the penalty for non-record imposed therein. It would have been very easy for the general assembly, if it had intended to place subsisting creditors upon the same plane with subsequent ones, to have said so. A very slight alteration of the phraseology of the act would have accomplished this end. This, however, was not done; on the contrary, a special class was mentioned, to whom, it seems, the benefit of the act was confined. *Expressio unius, exclusio alterius.*

The case of *King* v. *Fraser* (23 *S. C.*, 543), has no application to the case here. In that case the mortgage had been recorded out of time, and certain debts had been contracted by the mortgagor after the execution of the mortgage and before it had been recorded, and the question before the court was, whether the mortgage took precedence to these debts, which had not been reduced to judgment. This question depended upon the construction of the proviso to the act of 1876, General Statutes, section 1776, which enacted as follows: "Provided, nevertheless, that the above mentioned deeds or instruments in writing, if recorded subsequent to the expiration of said period of forty days, shall be valid to affect the rights of subsequent creditors and purchasers for valuable consideration without notice only from the date of such record, &c." The court held that the mortgage having been recorded, although out of time, yet under this proviso which authorized the record, it took rank from the date of the recording, and being the oldest, and in fact the only, lien upon the land, the creditors not having in the mean time reduced their claims to judgment, it necessarily had priority. Otherwise the anomaly would have been presented, of unsecured claims, having no lien whatever, defeating a lien which the proviso had declared should exist and become valid from date of recording. This proviso, however, is not involved in the case before the

court. This case turns upon the body of the act, in which subsequent creditors and purchasers for a valuable consideration without notice are given priority over an unrecorded mortgage, and a mortgage not recorded within the forty days. And the sole question, as it seems to us, is, are the creditors here *subsequent creditors* for a valuable consideration without notice ? We have seen that they are not such subsequent creditors, and therefore are not entitled to priority.

Nor does *Piester* v. *Piester* (22 *S. C.*, 144), affect this case. There Mr. Justice McIver drew the proper distinction when he said : "The necessary effect of this declaration is, that an unrecorded mortgage is void, is in fact not a mortgage, wherever the effect of so regarding it would be to affect the rights of a subsequent creditor without notice"—thus limiting its invalidity to the claims of subsequent creditors, but sustaining it as to all others.

Prior to the act of 1843 the registry laws of the State, both as to deeds of conveyance and mortgages, were found in the acts of 1698 and 1785. While these acts were the only acts of force on this subject, the cases of *Ash* v. *Ash*, 1. *Bay*, 306 ; *Smith* v. *Smith*, 1 *McCord*, 148, and *Barnwell* v. *Porteus*, 2 *Hill Ch.*, 221, *supra*, were heard and determined, in which the principle that an unrecorded mortgage had priority over a subsequently entered judgment was established and recognized; and this, too, as it seems, whether the judgment was founded upon a subsequently contracted debt or not. This doctrine, although established and adhered to, seems not to have been entirely satisfactory, and no doubt the act of 1843, which has reference to mortgages alone, was enacted in part to remove this dissatisfaction, by relieving subsequent creditors and purchasers from the difficulties surrounding them in consequence of these decisions. The act of 1843 thus made plain the registry law as to mortgages. Deeds and absolute conveyances of land were, however, left under the operation of the acts of 1698 and 1785, under which the old Court of Errors had decided in *Steele* v. *Mansell* (6 *Rich.*, 438), that an absolute deed never recorded was not void, but was still good between the parties, and if recorded, though after the time, it was notice to the world from the date of the registry—thus establishing a different rule from that applied to mortgages.

Subsequent to this, and no doubt with the view to harmonize the registry laws including conveyances and mortgages and all instruments in writing requiring recording, the act of 1876 was passed, with the proviso referred to above; which declares that all instruments in writing required to be recorded, shall be valid so as to affect subsequent creditors or purchasers only when recorded within forty days. Provided, nevertheless, that said mentioned deeds or instruments, if recorded subsequent to the expiration of the said forty days, shall be valid only from the date of the record—thus legalizing the recording of all papers required to be recorded, even after the forty days specified, and giving them rank from the date of the record as to all parties, including subsequent creditors and purchasers. This act of 1876, General Statutes, section 1776, now furnishes the registration law of this State, and while it clearly declares void all unrecorded conveyances and mortgages, as to subsequent creditors and purchasers for a valuable consideration without notice, yet there is nothing in it which declares such papers void as between the parties or as to subsisting creditors, like those contesting the validity of the mortgage herein.

It is the judgment of this court, that the judgment of the Circuit Court be reversed, and that the case be remanded to be adjudged and determined in accordance with the principles above announced, giving the Hirsch mortgage priority over the judgments mentioned.

MR. JUSTICE MCIVER concurred.

MR. JUSTICE MCGOWAN, *dissenting.* The single question in the case is whether a judgment recovered on a debt older than an unrecorded mortgage without notice, has priority over the mortgage though subsequent in date. It is manifest that this must be determined by the force and effect of the law as to registry. It has frequently been said, and certainly with great truth, that our registry law, before the act of 1843, concerning mortgages "was lamentably obscure and deficient," and we may add, especially upon the very point now made. The registry laws naturally embrace only deeds, conveyances, and such other instruments as can only be known to the world by recording, while a

judgment, which has a lien as well as a mortgage, is already of record and needs no further recording. It seems to me probable that this natural omission in the registry law of all reference to judgment creditors, has led to the effort to exclude them from the protection given to other subsequent incumbrancers without notice, and while ignoring altogether the judgments, to remit them back to the condition of simple subsisting creditors for whose protection no special provision is made by the registry law.

In *Ash* v. *Ash* (1 *Bay*, 306), as early as 1793, it was held, in reference to a mortgage which had been mislaid and on that account had not been recorded, "that the plaintiff's mortgage had not lost its lien by the entering up of subsequent judgments. The mortgage was not void by not being on record," &c. This decision was followed by a series of cases, but we think it may be truly said that it was never satisfactory to the bench or the bar of the State. In *Smith & Ravenel* v. *Smith*, 1 *McCord Ch.*, 148 (1825), Judge Nott said: "I must confess I have never been perfectly satisfied with that decision. [*Ash* v. *Ash*.] But it has been received as law and acted upon for upwards of thirty years, and ought not to be questioned." In *Barnwell* v. *Porteus*, 2 *Hill Ch.*, 221 (1835), Judge Evans, sitting for Chancellor Harper, said: "If this were now a new question, I should have great difficulty in making up my opinion, but I am relieved by former adjudications from any difficulty on the point," &c.

And in *Steele* v. *Mansell*, 6 *Rich.*, 442 (1852), where, after great argument and much deliberation, the old Court of Errors was divided, Judge Wardlaw, who delivered the opinion of the majority of the court, said: "In vain may it now be shown that *Ash* v. *Ash*, and other cases out of which the rule grew, were decided altogether in reference to the act of 1698, at places where and at times when the act of 1785 was not considered to be of force. However introduced, the rule, ever since 1799, has been acted on." And at another place, "It may be that this was not a correct construction of the section, and that it would have been better to hold that a judgment entered is like a mortgage recorded, and by the section an unregistered deed is made ineffective to withstand the lien of the judgment, which attaches as if there was no such deed, unless notice of it has come to the

creditor from change of possession or other circumstances," &c.

The registry laws of the State and the decisions under them were in this very doubtful condition when the legislature passed the act of 1843, in reference to mortgages, and followed it up by the act of 1876, as to "all instruments in writing required by law to be recorded." This act, now embodied in section 1776 of the General Statutes, substantially re-enacted that of 1843, with certain additions, expressly repealed all former laws "inconsistent with it," and, as we suppose, was intended to be a system of registry, superseding all other laws upon the subject. See *Williams* v. *Beard*, 1 *S. C.*, 322. If in this we are correct, we need not perplex ourselves with the confusion and inconsistencies which existed under the old law, but address ourselves to the effort to give proper construction to the new, availing ourselves, of course, of all the light afforded by the former.

What, then, is the proper interpretation of the act of 1876 upon the point, whether a subsequent judgment creditor without notice has priority over a mortgage which was never recorded ? The provision is as follows : "All deeds of conveyance of land, all deeds of trust, &c., all mortgages or instruments in writing in the nature of a mortgage of any property real or personal * * * and generally all instruments in writing now required by law to be recorded, &c., delivered or executed, &c., shall be valid so as to affect, from the time of such delivery or execution, the rights of subsequent creditors or purchasers for valuable consideration without notice, only when recorded within forty days from the time of such delivery and execution, &c., &c. Provided, nevertheless, that the above mentioned deeds or instruments in writing, if recorded subsequent to the expiration of said period of forty days, shall be valid to affect the rights of subsequent creditors and purchasers for valuable consideration without notice, only from the date of such record."

In giving interpretation to the act we can derive little assistance from decided cases, for since its passage no case has arisen involving the very point. The case of *McNamee & Co.* v. *Huckabee* (20 *S. C.*, 190), was upon the question of priority between two absolute deeds, both of which were recorded out of time; and the case of *King* v. *Fraser*, recently decided, was in reference to

the effect of a mortgage recorded out of time, upon the unsecured debts of the mortgagor, contracted between the date and the registry of the mortgage. There was no question in it as to the effect of a subsequent judgment as against a mortgage that was never recorded. That question is now before us for the first time under the act of 1876. Considering all the parts of the act together as making a system of registry, it seems to me that three things are manifest: first, that all the kinds of instruments mentioned, including mortgages, are required to be recorded; second, that if recorded within forty days, they shall be valid from their date, but if not recorded within that time, they shall be valid only from the date of said record; and, third, as a necessary consequence of the foregoing, that if not recorded at all, they shall never be valid. As was said by Mr. Justice McIver in *Piester* v. *Piester* (22 *S. C.*, 146): "The necessary effect of this declaration is, that an unrecorded mortgage is void—is in fact not a mortgage—whenever the effect of so regarding it would be to affect the rights of a subsequent creditor without notice."

So far, then, there is no difficulty. But, notwithstanding this evidence of the spirit of the act, in the strong penalty imposed for not recording, it is urged that this refers only to subsequent creditors, and that all others are left precisely in the same condition they would have occupied if there never had been a registry law; and, therefore, if a creditor of that class recovers a judgment against his debtor, that judgment must still retain the character of a subsisting debt, and cannot become a subsequent incumbrance, and entitled to protection as such. The act certainly does not say any such thing, and in view of its manifest object, we do not feel authorized to make that inference merely from its silence upon the subject. It seems to me that this view overlooks the fact that all mortgages are required to be recorded; that, in the interest of fair dealing, registry is the settled policy of the State. A mortgagee who does not record his mortgage surely disregards the law—puts it in the power of the mortgagor to impose on others, and subjects himself to dangers which are not confined to subsequent creditors, but may as well grow out of the class of subsisting creditors. Indeed, I could never perceive any great difference between subsisting and subsequent credi-

tors, as to a mortgage which was never recorded, and of which neither had notice—the property never changing hands, but all the while remaining in the possession of the debtor, and to all appearance unincumbered. The simple fact is, that neither knows that there is a mortgage, and both trust upon faith, that the property is as the record shows it.

It is true that a mortgage is good between the parties. although not recorded. They have notice, and, of course, the registry act does not apply to them, but was meant for other creditors. If a subsisting creditor without notice obtain a second mortgage which he records, can there be a doubt that he would be entitled to precedence over an unrecorded mortgage? *Williams* v. *Beard, supra.* If he obtain an absolute conveyance, he would also have precedence; and that, too, if the sale were made by the sheriff under a judgment recovered on a subsisting debt, and the judgment creditor himself becomes the purchaser. This is clearly put by Chancellor Inglis in *McKnight* v. *Gordon* (13 *Rich. Eq.*, 249), where he says: "In *Barnwell* v. *Porteus, supra,* the execution under which the land was sold had been lodged on a judgment entered after the execution of the mortgage, and the debt, which had been the cause of action therein, had been contracted before the making of the mortgage. It was expressly decided that the *fi. fa.* in the sheriff's hands against the mortgagor conferred upon the officer no power and authority to levy upon and sell the whole absolute estate in the lands. Yet the purchaser, although he was himself the creditor, was permitted, as a purchaser who had first recorded his deed, to hold against and over the mortgage," &c.

That is to say, if Congdon, Hazard & Co. had actually forced a sale, and become the purchasers and recorded the sheriff's deed, their title would have been good against and over the mortgage. This most conclusively shows that under the old law the creditor, by obtaining judgment, ceased to be merely a subsisting creditor, and therefore the principal reason why the law as it then stood, did not protect the judgment itself before actual sale under it, must have been the circumstance that it was not like a mortgage, regularly recorded or capable of record in the register's office. Now that we are endeavoring to give construction to the

new registry law so as to make it uniform and symmetrical, and are not embarrassed by the conflicting interpretations of the old, we hesitate to adopt a distinction which seems technical and shadowy, was never satisfactory, and which caused, and if followed will continue to cause, great confusion and injustice.

It was soon perceived that so far as the rights of the delinquent mortgagee were concerned, there was small difference between a judgment lien with the power to sell, and an actual sale and purchase under it. In *Freeman on Judgments*, section 366, the author says: "The purchaser at a sale under a judgment is, to the same extent as if he were purchaser at a private or voluntary sale, protected from claims previously acquired by third persons from the judgment debtor, of which he had no actual or constructive notice.  *   *   *   In some of the United States, however, the registry laws so modify the effect of conveyances and other instruments concerning real estate, as to give a judgment lien precedence over any unrecorded instrument, of which the judgment creditors had no knowledge at the date of the attaching of the lien of his judgment; and the holder of the lien takes all the title the records show to be in the judgment debtor," &c. And in a note the learned author says: "The tendency of the recent statutes and the decisions interpreting them, is to give a judgment lien precedence over a prior unregistered conveyance or encumbrance, especially if a plaintiff have no notice of it when his judgment was docketed or registered, or the levy of his writ made"—citing numerous authorities from Texas, Alabama, Georgia, Virginia, West Virginia, and Illinois.

A judgment is, for most purposes, to be regarded as a new debt, and this new debt is not in general affected by the character of the old one. *Freeman*, section 217. It is itself a thing of record, and has a lien from its date without further recording; and, in view of the spirit and scope of the act of 1876, and to promote its declared policy of enforcing registry by penalties upon those who disregard its provisions, it seems to me that a subsequent judgment without notice should be held to be what it really and substantially is—a subsequent encumbrance in the sense of the act, or, in the words of Judge Wardlaw, "that a judgment entered is like a mortgage recorded," and as such

entitled to the protection afforded by the act. This precise point was touched but not decided in *Boyce* v. *Shiver* (3 *S. C.*, 520), in which Judge Glover said : "I apprehend no case can be found since the passage of the act of 1843, where a mortgage not recorded within the prescribed time, has been held to be a preferred lien against a subsequent judgment creditor without notice."

The whole policy of our law is against secret liens of every kind and form. It was in this view that our courts discarded the old English doctrine of the lien of the vendor. See *Herring & Co.* v. *Cannon* (21 *S. C.*, 217), citing, among others, the case of *McCorkle* v. *Montgomery*, 11 *Rich. Eq.*, 132, in which Chancellor Dunkin said : "Upon this subject the language of Chief Justice Marshall in *Bayley* v. *Greenleaf* (7 *Wheat.*, 46) is instructive : To the world, says he, 'the vendee appears to hold the estate, divested of any trust whatever, and credit is given him in the confidence that the property is his own in equity as well as in law. A vendor relying upon this lien ought to reduce it to a mortgage, so as to give notice of it to the world. If he does not, he is in some degree accessory to the fraud committed on the public, by an act which exhibits the vendee as the complete owner of the estate, on which he claims a secret lien. It would seem inconsistent with the principles of equity and with the general spirit of our laws that such a lien should be set up in a Court of Chancery, to the exclusion of *bona fide* creditors.' It may be added" (says Chancellor Dunkin) "that the act of 1843, requiring all mortgages of real estate, however formal and perfect, to be recorded within sixty [now forty] days, may be regarded as a legislative declaration of the prohibitory policy of the country against any such secret liens." And Chief Justice Moses, in *Boyce* v. *Shiver*, *supra*, well said : "So far from any disposition to extend the provisions now existing by law, in favor of secret liens, we feel that the highest considerations of public policy require that they should be held within their prescribed bounds. There is not a single modern writer, whose opinion carries weight, who does not regret that the courts ever favored the introduction of secret liens on property, and many of the most eminent judges of England, while they felt bound from precedent and authority to sustain them, denied the wisdom and policy of the rule which

permitted them; and but few judges in our country, whilst also following the authority of names which preceded their own, have failed to declare their determination not to extend them beyond the limits to which they have been carried," &c.

I think the judgment below should be affirmed.

Judgment reversed.[1]

---

[1] This completes the cases of April Term, 1887.—Reporter.