17393

The SOUTH CAROLINA NATIONAL BANK, Greenville, South Carolina, Appellant, v. C. D. GUEST et al., of whom The State Bank and Trust Company, is Respondent.

(102 S. E. (2d) 215)

368

*Messrs. Rainey, Fant, Brawley & Horton* and *Younts
& Spence,* of Greenville, *for Appellant,*

*Messrs. Grier, McDonald, Todd, Burns & Bradford,* of
Greenwood, *for Respondent,*

February 24, 1958.

TAYLOR, Justice.

The question presented in this appeal involves the priority of one of two chattel mortgages, one held by Appellant, South Carolina National Bank of Greenville, South Carolina, and the other by Respondent, The Bank of Greenwood, South Carolina.

The facts are not in dispute. C. D. Guest, a resident of Greenville County, somewhere between 9 a. m. and 1 p. m. on January 5, 1955, procured a loan of $3,000.00 from said Greenville Bank and by way of security executed a chattel mortgage upon a certain Chrysler automobile. Later, on the same day, at some time after 3 p. m., the said C. D. Guest borrowed $3,515.24 from the Ninety Six Branch of the Greenwood Bank upon the same vehicle, representing that it was free of liens.

The Greenville Bank recorded its mortgage in the Office of the Register of Mesne Conveyances for Greenville County on January 7, 1955, at 9:17 a. m. Thereafter, on the same day, the Greenwood Bank likewise did so at 10:00 a. m. Thus, it is seen that while the Greenville mortgage was first in point of time of execution and recordation, it was not of record at the time of the execution of the Greenwood mortgage. There is no contention but that the Greenwood Bank acted in good faith and without notice of the Greenville mortgage.

The controlling consideration is the force and effect to be given the applicable Recording Act of 1925, 34 Statutes at Large 85, now appearing as Section 60-101, Code of Laws of South Carolina, 1952:

" * * * all mortgages or instruments in writing in the nature of a mortgage of any property, real or personal, * * * and generally all instruments in writing required by law to be recorded in the office of the register of mesne conveyances or clerk of court in those counties where the office of register of mesne conveyances has been abolished or in the office of the Secretary of State delivered or executed on or after August 1, 1934, except assignments and satisfactions of conditional sale contracts securing the purchase money of motor vehicles or refrigerators, shall be valid so as to affect the rights of subsequent creditors (whether lien creditors or simple contract creditors), or purchasers for valuable consideration without notice only from the day and hour when they are recorded in the office of the register of mesne conveyances or clerk of court of the county in which the property affected is situated, in the case of real estate or in the case of personal property, in which the owner of such property resides, if he resides within the State, or, if he resides without the State the county in which such personal property is situated at the time of the delivery or execution of such deed or instrument."

"A study of the development of the Recordation Acts (Sec. 8875 of the Code) shows that they were an outgrowth of efforts to protect 'subsequent purchasers and creditors' from 'secret liens.' These are the true key words to any proper study and application of the principles. Such study shows (and it is undisputed) that at the common law, a mortgage, deed or other instrument, although not recorded, was good not only between the parties but against the world. This led to difficult situations and to hardships when thereafter innocent purchasers and mortgagees were involved. In other words, the evil of such secret transfers and secret liens

became evident, and resulted in the equitable doctrine of 'subsequent purchaser for value without notice' as well as the development of the Recording Acts.

"Therefore, the important point is that the common law doctrine as to the validity of a paper such as that of the plaintiff is applicable here except insofar as it is limited if at all by the terms of the Recording Act. By its terms, however, the Act (Sec. 8875) merely places a limitation upon such validity insofar as it affects the rights of subsequent purchasers of creditors without notice. * * *" *Goodrich Silvertown, Inc., v. Rogers,* 189 S. C. 101, 200 S. E. 91, 93.

An exhaustive review of the various Recording Acts throughout the country is found in Patton on Titles beginning at page 33. There they are classified into three groups:

(1) Those which give priority to the instrument first recorded, whether prior or subsequent to another.

(2) Those which invalidate an instrument as against subsequent ones acquired in good faith before its recordation.

(3) Those which give protection to a subsequent paper as against a prior one, provided it is first to be recorded.

Our Act falls within the second group as do approximately two thirds of those of the other States. The author, citing numerous authorities, observes:

"Under this type of Act here considered the earlier purchaser can protect himself from a subsequent purchaser who is without notice of his rights only by recording his conveyance before the latter conflicting interest occurs. A later recording will not affect the rights of a subsequent purchaser even though prior to the recordation of the conveyance to the latter. And as distinguished from the Acts considered in the ensuing section (referring to the third classification, insertion added) the protection to the subsequent purchaser without notice exists regardless of when he records or whether he ever records his own conveyance."

In this connection, see also *Turpin v. Sudduth,* 53 S. C. 295, 31 S. E. 245, 306; and the annotation contained in L. R. A. (1916D), page 244.

The present Act provides no grace period for recording; therefore, the instrument should be recorded promptly upon execution to assure its validity against subsequent liens. For a mortgagee not to do so renders him liable to the risk of a mortgage being displaced by a subsequent lien fastening upon the property before its registration. While we are concerned here with construction of a statute, it is equitable that any risk incurred by one failing to protect himself by promptly recording his mortgage should fall upon him who fails to act promptly rather than upon another who can only rely upon the record for his protection, *Epps v. McCallum Realty Company,* 139 S. C. 481, 138 S. E. 297.

The oft cited case of *King v. Fraser,* 23 S. C. 543, was cited by both Appellant and Respondent as authority for their respective positions; however, we are of opinion that the reasoning in that case supports an affirmance of the case at bar. For a review of the Recording Acts from 1843 through 1914, see *In re Syleecau Mfg. Co.,* D. C., 17 F. (2d) 503, 506, all of which beginning with and subsequent to the 1876 Act, place subsequent creditors and subsequent purchasers in the same category and are referred to as "subsequent creditors and purchasers."

In *King v. Fraser, supra,* the question was whether a mortgagee, whose mortgagee had not been recorded within the prescribed time but was afterwards recorded, took precedence over the general unsecured creditors of the mortgagor; and it was held that the mortgage had priority over all the unsecured creditors, including those whose debts were contracted between the date of the execution of the mortgage and the date of its record, but that it was otherwise as to creditors who had acquired a lien subsequent to the execution of the mortgage but prior to

its record, as well as to purchasers without notice who had acquired title after the mortgage was executed but before it was recorded. See also the recent case of *Goodwin v. Harrison*, 231 S. C. 243, 98 S. E. (2d) 255.

Appellant also takes the position that, inasmuch as the two mortgages were executed on the same date, the transactions are to be construed as having transpired simultaneously, in that the term "date" embraces the whole day and fractions thereof are not considered in computation of time, 52 Am. Jur. 338. An exception to this rule, however, arises when it becomes necessary to determine the rights of rival lien claimants. *Carroll v. Cash Mills*, 125 S. C. 332, 118 S. E. 290; 33 Am. Jur. 437; 52 Am. Jur. 341; Ex parte Stagg, 1 Nott & McC., 405, 10 S. C. L. 405. Here, in order to establish priority of its mortgage over that of Appellant it was necessary that Respondent show that it had become a lien creditor subsequent to, and without notice of, Appellant's mortgage transaction, as well as prior to the recording of Appellant's mortgage. The case is thus within the exception before mentioned.

For the foregoing reasons, we are of opinion that the mortgage of the Bank of Greenwood has priority over the mortgage held by the South Carolina National Bank of Greenville; that all exceptions should be dismissed and the Order appealed from affirmed; and It Is So Ordered. Affirmed.

STUKES, C. J., and OXNER, LEGGE and Moss, JJ., concur.