21003

ATLAS SUPPLY COMPANY, Appellant, v. Howard P. DAVIS, Anne A. Davis, and First Federal Savings and Loan Association of Orangeburg, Respondents.

(256 S. E. (2d) 859)

*Levi & Wittenberg,* Sumter, *for appellant.*

*C. Walker Limehouse,* Orangeburg, *for respondent First Federal Savings and Loan Association* of Orangeburg.

*Bryant, Fanning & Yarborough,* Orangeburg, *for respondents Davis et al.*

July 12, 1979.

LEWIS, Chief Justice:

Appellant holds a recorded judgment lien and respondent, First Federal Savings and Loan Association (First Fed-

eral), holds a recorded mortgage lien over real property owned by respondents Howard P. and Annie A. Davis. This action was brought to determine which lien had priority. Appeal is from an order of the lower court, concurring in the finding of the special referee, that the mortgage lien had priority over the judgment lien. The facts have been stipulated and are not in dispute.

Appellant's judgment was obtained on June 21, 1973 on an open account contracted between April 30, 1971 and December 28, 1972. It was filed for record on June 25, 1973, at 9:58 a.m. It is properly indexed in the Abstract of Judgment books with a notation "See Roll." Reference to the Judgment Roll shows the foregoing hour and day of filing.

The mortgage held by First Federal was executed on June 25, 1973, and filed for record on that date at 11:59 a. m., about two hours after the filing of appellant's judgment. The mortgage is properly indexed and recorded, showing the foregoing hour and day of filing.

Although the record shows that the judgment was filed for record about two hours prior to the filing of the mortgage, this would not affect the result, as is shown by the controlling decision of *Prudential Insurance Company v. Wadford,* 232 S. C. 476, 102 S. E. (2d) 889 (1958). At the time of the *Wadford* decision, Section 30-7-10 of the 1976 Code of Laws (then Section 60-101) provided, in pertinent part, that "all deeds . . . all mortgages . . . or other liens on real or personal property, or both, created by law or by agreement of the parties . . . shall be valid so as to affect the rights of the subsequent creditors . . . only from the day and hour when they are recorded . . .."

In *Wadford,* a judgment creditor relied upon the foregoing section to establish priority over a subsequently recorded mortgage. The mortgage was executed on May 21, 1954, as security for the mortgagor's obligation of the same

date. It was recorded on June 24, 1954. The judgment was entered of record on May 24, 1954, prior to the recording of the mortgage, and was obtained in an action against the mortgagor on an account for merchandise purchased prior to May 21, 1954, the date of the mortgage obligation. The Court, in *Wadford,* following an earlier decision in *Carraway v. Carraway,* 27 S. C. 576, 5 S. E. 157, held:

. . . the recording statute was intended to protect against the lien of an unrecorded mortgage, persons who, without notice of it, subsequent to its execution might reasonably have extended credit to the mortgagor, or purchased the mortgaged property, in reliance upon his apparently unencumbered ownership, . . . ; and that a creditor who between the date of the execution of the mortgage and the date of its record entered judgment against the mortgagor on an obligation that had been created prior to the date of the mortgage was not within the protection of the statute because his extension of credit to the mortgagor was antecedent, not subsequent, to the execution of the mortgage.

The subsequently recorded mortgage was held to have priority over the earlier recorded judgment in *Wadford.* As in *Wadford,* the debt upon which the judgment in this case was entered was antecedent to the creation of the mortgage obligation. As such, appellant's judgment is not within the protection of the statute, and the lower court correctly so held.

Appellant argues, however, that the foregoing conclusion overlooks the fact that shortly after the *Wadford* decision Section 30-7-10 (former Section 60-101), *supra,* was amended by adding the following proviso:

*Provided,* however, that in case of a subsequent purchaser of real estate, or in the case of a subsequent lien creditor on real estate or personal property or both, for valuable consideration without notice, the instrument evidencing such subsequent conveyance or subsequent lien must be filed for record in order for its holder to claim under this section

as a subsequent creditor or purchaser for value without notice, and the *priority shall be determined by the time of filing for record.* (Emphasis added.)

Appellant argues that the above proviso repudiated the holding in *Wadford* and points specifically to the emphasized language. In addition to *Wadford*, the case of *South Carolina National Bank v. Guest,* 232 S. C. 367, 102 S. E. (2d) 215, was decided in early 1958 and shortly before the adoption of the amendment in question to Section 30-7-10. We agree with the trial judge that the 1958 amendment was an attempt to correct the result reached in the *Guest* case, where two mortgages which were created the same day and recorded on a subsequent day resulted in a ruling in favor of the second mortgagee although the first bank had recorded first; and did not alter "the basic concept and structure of the recordation statute as protecting subsequent creditors rather than one whose original debt was antecedent in time to the mortgage obligation."

The judgment is accordingly affirmed.

LITTLEJOHN, J., concurs in result.

LITTLEJOHN, Justice (concurring) :

I concur in the result reached by the majority opinion but on a different and more simple basis.

On June 21, 1973, the plaintiff-appellant obtained a judgment against defendant Howard P. Davis. On Friday, June 22, it was mailed to the Clerk of Court for Orangeburg County for entry and recording. Howard P. Davis owned real estate in Orangeburg County. The judgment was received by the clerk in the Monday morning mail and clocked-in as of "June 25, 1973, at 9:58 a. m." It was placed in a drawer for entry into the index, but was never entered into the daily index.

A mortgage was executed by Davis and his wife that same day (June 25, 1973), in favor of First Federal Sav-

ings and Loan Association of Orangeburg. It was clocked-in at the clerk's office at 11:59 a. m., and entered in the daily index.

This action was brought by the plaintiff-appellant for the purpose of asking the court to determine the priority of the two liens. The lower court found that the lien created by the mortgage of the Savings and Loan Association was senior. The plaintiff judgment-creditor has appealed.

Section 30-9-40, *Code of Laws of South Carolina* (1976), provides in pertinent part as follows: ·
"§ 30-9-40. Requirement and effect of indexing of instruments filed for recording.

"The register of mesne conveyances or clerk of court in those counties where the office of register of mesne conveyances has been abolished shall immediately upon the filing of record of any deed, mortgage or other written instrument of the character mentioned in § 30-7-10 [includes judgments] enter it upon the proper indexes in his office, which shall constitute an integral, necessary and inseparable part of the recordation of such deed, mortgage or other written instrument for any and all purposes whatsoever . . .. The entries in the indexes hereby required to be made shall be notice to all persons sufficient to put them upon inquiry as to the purports and effect of the deed, mortgage or other written instrument so filed for record, but the recordation of a deed, mortgage or other written instrument shall not be notice as to the purport and effect thereof unless the filing of the instrument for record be entered as required hereby in the indexes."

Compliance with this Code section is accomplished by the clerk's maintaining a daily index and a permanent index. When an instrument is delivered to the clerk for recording, it becomes his duty under the statute to immediately enter the instrument in the daily index. It is then transferred, daily or regularly, to the permanent index. One of the chief

purposes of recording an instrument is to give notice to any interested party. Indexing is a vital part of giving notice, and it is not until an instrument has been entered on an index that a recording has taken place. There is no notice to the public until such an entry is made on either the daily index or the permanent index. The following is taken from the transcript of record:

"JUDGE HYDRICK: But this judgment did not get on the day book?

"MR. WESTBURY: This particular one did not get on the day book.

"JUDGE HYDRICK: Did it ever get on the day book?

"MR. WESTBURY: Not to my knowledge. I would say it did not.

"MR. WITTENBERG ASKS MR. WESTBURY:

"Q. Mr. Westbury, this is a question I hate to ask you. If it didn't get on there, it was an act of omission of your office, was it not?

"A. Apparently, it was an act of omission.

"Q. What you are saying in the normal course, it would have been put on that day book?

"A. Yes, sir, may I say again that up until a few years prior to this, we only put deeds and mortgages. That would not be a reason not to put it on there in 1973."

There is a moment at which an instrument becomes recorded. We hold that such moment is the time when the public has notice; the public has no notice until it is indexed.

At the time the mortgage was recorded and entered in the daily index, no judgment has been recorded.

The lower court should be

Affirmed.