**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(D)(2), SCACR.**

## THE STATE OF SOUTH CAROLINA
### In The Court of Appeals

Kennedy Funding, Inc., as predecessor-in-interest, and BNP Paribas, Respondents,

v.

Pawleys Island North, LLC, Will Darwin Wheeler, Peggy Wheeler-Cribb, and J. Mars Sapp, Defendants,

Of Whom Pawleys Island North, LLC, Will Darwin Wheeler, and Peggy Wheeler-Cribb are the Respondents,

And J. Mars Sapp is the Appellant.

Appellate Case No. 2013-001447

———————

Appeal From Georgetown County
Joe M. Crosby, Master-in-Equity

———————

Unpublished Opinion No. 2015-UP-138
Heard October 14, 2014 – Filed March 11, 2015

———————

**AFFIRMED IN PART AND REVERSED IN PART**

———————

Thomas Whatley Bunch, II, and Paul Hamilton Hoefer, of Robinson McFadden & Moore, PC, of Columbia for Appellant.

Robert H. Gwin, III, of Gwin Law Office, LLC, of Myrtle Beach, for Respondents Pawley's Island North, LLC, Will Darwin Wheeler, and Peggy Wheeler-Cribb; and Robert Hope Jordan and Merritt Gordon Abney, of Nelson Mullins Riley & Scarborough, LLP, of Charleston, for Respondents Kennedy Funding, Inc., as predecessor-in-interest, and BNP Paribas.

**PER CURIAM:**  In this action arising from a mortgage foreclosure, J. Mars Sapp appeals, arguing the master erred in (1) not finding the conveyance of the property from Will Darwin Wheeler to Pawleys Island North, LLC (Pawleys) was fraudulent; (2) not finding the mortgage transaction between Pawleys and Kennedy Funding, Inc. (Kennedy) was fraudulent; and (3) not setting aside the mortgage as a fraudulent conveyance or declaring Kennedy's lien is subordinate to Sapp's lien on the property.  We affirm in part and reverse in part.

## FACTS

This action arises from a mortgage foreclosure initiated by Kennedy, a New Jersey corporation.  Kennedy loaned Pawleys, a South Carolina limited liability company, $960,000 on April 30, 2009.  The loan was secured by a mortgage and security agreement that was recorded in the Office of the Registrar of Deeds in Georgetown County.  Pawleys mortgaged to Kennedy two parcels of real property (Lots 3 and 4) located on Pawleys Island.  Additionally, Wheeler and Peggy Wheeler-Cribb[1] (Guarantors) executed a guaranty whereby they individually, jointly, and severally guaranteed repayment under the loan to Pawleys, including all costs of collection and reasonable attorney's fees.  Pawleys defaulted on the loan payments, and Kennedy initiated a foreclosure action on the property on February 9, 2011.[2]

In the interim, Sapp attempted to collect on a 2010 civil judgment against Wheeler by executing against the property.  However, Sapp could not collect on the

---

[1]  Wheeler-Cribb is Wheeler's mother.

[2]  Kennedy filed an Amended Summons and Complaint on September 5, 2012, adding BNP Paribus (BNP), a French corporation, as a plaintiff, alleging that Kennedy assigned its rights to BNP.  Although the respondents in this case are "Kennedy Funding, Inc., as predecessor-in-interest, and BNP," we refer to the respondents as "Kennedy."

judgment because the property at issue was conveyed from Wheeler to Pawleys in April 28, 2009, by quitclaim deed for $5.[3] As a result, Kennedy named Sapp as a possible subordinate lien holder with an interest in the mortgaged property. Sapp answered the amended complaint, asserting he was a judgment lien holder and requesting his lien be declared senior to Kennedy's lien. Kennedy filed a motion for summary judgment, requesting an order dismissing Sapp's claim of a lien interest superior to Kennedy's lien, and in the alternative, an order declaring Sapp's lien junior and subordinate to Kennedy's lien. After a hearing on the motion, the trial court granted Kennedy's motion for summary judgment and ruled Sapp's lien, if he had one, was junior and subordinate to Kennedy's lien. Sapp filed a motion to reconsider, which the court denied. Sapp filed a cross-claim against Wheeler for violation of the Statute of Elizabeth, contending Wheeler's transfer of the property to Pawleys constituted a fraudulent conveyance and all subsequent transfers were void. However, he argued if the conveyance of property was not completely void, it was void as to Lot 3, which was unencumbered at the time of the transfer from Wheeler to Pawleys.

In March 2012, the parties agreed by consent order to refer the case to a master-in-equity. The master held a non-jury trial on February 11, 2013. During trial, Sapp contended that even if he were not deemed to have a lien interest superior to Kennedy, he should be deemed to be a junior lien holder against Pawleys based on the alleged fraudulent transfer from Wheeler to Pawleys. Kennedy and Wheeler opposed Sapp's claim to be a junior lien holder on the basis that no fraudulent conveyance occurred. The master filed his order on June 7, 2013, finding (1) the mortgage was an arms-length transaction and no familial or prior business relationship existed between Pawleys and Kennedy; (2) valuable consideration existed to support the mortgage; (3) Sapp failed to prove by clear and convincing evidence that Kennedy participated in a fraudulent scheme; and (4) Kennedy was a good faith purchaser for value when it entered into the mortgage agreement with Pawleys and did not participate in a plan to defraud Sapp. As for Sapp's contention that the first transfer from Wheeler to Pawleys was fraudulent and should be declared void for purposes of establishing a junior lien in his favor, the master found the increase in the value of Wheeler's ownership interest in Pawleys was valuable consideration to support the transfer and no proof was presented that Wheeler intended to defraud Sapp at the time he transferred the property. The

---

[3] Two days later, on April 30, 2009, Kennedy made the loan to Pawleys and took a mortgage on the property.

master concluded Kennedy was entitled to foreclosure of the property and ordered it sold at a public auction.

Sapp filed a notice of appeal, appealing the master's February 14, 2012 summary judgment order and June 7, 2013 order and judgment. He also filed an amended notice of appeal, confirming Pawleys, Wheeler, and Wheeler-Cribb were also respondents in the appeal.

## STANDARD OF REVIEW

A clear and convincing evidentiary standard applies to fraudulent conveyance claims brought under the Statute of Elizabeth. *Oskin v. Johnson*, 400 S.C. 390, 397, 735 S.E.2d 459, 463 (2012). "An action to set aside a conveyance under the Statute of Elizabeth is an equitable action, and a *de novo* standard of review applies." *Id.*

## LAW/ANALYSIS

## I.     Conveyance of Property from Wheeler to Pawleys

Sapp argues the assignment of the note was a fraudulent conveyance in violation of the Statute of Elizabeth. We agree.

The Statute of Elizabeth provides:

> Every gift, grant, alienation, bargain, transfer, and
> conveyance of lands . . . for any intent or purpose to
> delay, hinder, or defraud creditors and others of their just
> and lawful actions, suits, debts, accounts, damages,
> penalties and forfeitures must be deemed and taken . . . to
> be clearly and utterly void . . . .

S.C. Code Ann. § 27-23-10(A) (2007).

"In interpreting this statute, this Court has held conveyances shall be set aside under two conditions: First, where there was valuable consideration and the transfer is made by the grantor with the actual intent to defraud; and, second, where a transfer is made without actual intent to defraud but without valuable consideration." *Oskin*, 400 S.C. at 397, 735 S.E.2d at 463. "'To annul for fraud a

deed based upon a valuable consideration, it must not only be shown that the grantor intended thereby to hinder, delay, or defraud creditors, but it must also appear that the grantee participated in such fraudulent purpose.'" *McDaniel v. Allen*, 265 S.C. 237, 243, 217 S.E.2d 773, 776 (1975) (quoting *McElwee v. Kennedy*, 56 S.C. 154, 170, 34 S.E. 86, 91-92 (1899)). "The Statute of Elizabeth is concerned with the intent of the grantor who conveys an interest in land." *Oskin*, 400 S.C. at 398, 735 S.E.2d at 464.

Sapp argues Wheeler's transfer of the property to Pawleys fails under both of the conditions required to set aside a conveyance. He asserts the transfer was void and the property is subject to Sapp's judgment against Wheeler. Sapp argues this case is factually identical to *Coleman v. Daniel*, 261 S.C. 198, 199 S.E.2d 74 (1973). In *Coleman*, a judgment creditor brought an action to set aside as fraudulent the transfer of real estate by a judgment debtor to his daughter and son-in-law. *Id.* at 200, 199 S.E.2d at 75. The transfer included the property where the judgment debtor had lived his entire life and the debtor made a separate agreement with his daughter to continue living on the property rent-free. *Id.* at 202-03, 199 S.E.2d at 76. Our supreme court held the evidence showed the judgment debtor was insolvent at the time the transfer was made; he received grossly insufficient consideration for the land transferred; he intended in making the transfer to defraud the judgment creditor; and this intent was imputable to the grantees. *Id.* at 210-11, 199 S.E.2d at 80.

Sapp claims the circumstances of Wheeler's transfer to Pawleys were never explained, Wheeler did not testify, and the circumstantial evidence points only to a fraudulent transfer. Sapp asserts the evidence of fraud includes (1) Wheeler was indebted to Sapp at the time of the transfer; (2) there was no consideration for the transfer, or at best, the consideration received by Wheeler was grossly inadequate; (3) Wheeler conveyed the property to a family-owned limited liability company solely owned by him and his mother; (4) litigation was pending; (5) the transfer was carried out in secret without Sapp's knowledge; (6) Wheeler owned the property in fee simple for years and departed from his normal course of business by conveying it to Pawleys; (7) the transfer rendered Wheeler insolvent as he never paid anything on the debt, the Sapp execution was returned *nulla bona*, and Wheeler had no other unencumbered property on which to execute; and (8) Wheeler, through Pawleys, reserved the use, possession, and development of the property.

The master found the transfer from Wheeler to Pawleys was supported by valuable consideration because Wheeler increased the value of his 99% membership interest in Pawleys by more than $1.9 million by the conveyance of the property valued at $1.92 million and this was valuable consideration to support the transfer. However, Sapp argues Wheeler actually lost $1.92 million, the full value of the property, by the transfer and he diluted his holdings by the transfer and received no benefit. Therefore, Sapp asserts the transfer was not supported by any consideration. In the alternative, he argues if this court finds the conveyance was supported by consideration, at best, it was inadequate consideration.

The property at issue was conveyed from Wheeler to Pawleys, an LLC in which Wheeler held a 99% membership interest, in April 28, 2009, by quitclaim deed for $5. The quitclaim deed Wheeler gave to Pawleys was for "$5 and no other consideration" and included an affidavit from Wheeler stating the deed was exempt from recording fees because the property was being transferred to Pawleys to increase the value of Wheeler's stock or interest held in Pawleys. We find this was not a legitimate reason for a transfer. We also find clear and convincing evidence exists to show the transfer from Wheeler to Pawleys was in violation of the Statue of Elizabeth because it was without valuable consideration. We note the transfer was just seven months after Sapp filed his action on September 30, 2008, to collect outstanding rent obligations from Wheeler.

## II.    Mortgage Transaction Between Pawleys and Kennedy

Sapp argues the mortgage transaction between Pawleys and Kennedy was fraudulent. We disagree.

"To entitle one to take advantage of the plea that he is a purchaser for value without notice, it is necessary for him to show three things: (1) [t]hat the purchase money was actually paid before notice of outstanding incumbrances or equities (giving security for the payment is not sufficient, nor is past indebtedness a sufficient consideration); (2) that he has purchased and acquired the legal title, or the best right to it, before notice of outstanding incumbrances or equities; and (3) that he purchased bona fide without notice." *Kirton v. Howard*, 137 S.C. 11, 36, 134 S.E. 859, 868 (1926).

Sapp asserts that prior to loaning money to Pawleys on April 30, 2009, Kennedy had actual knowledge that litigation was pending against Wheeler, Wheeler owed a debt to Sapp, and Sapp was seeking damages for Wheeler's failure to perform

under a lease guaranty. Additionally, Kennedy knew Wheeler transferred the property to Pawleys by quitclaim deed. Thus, Sapp argues because Kennedy had notice the conveyance to Pawleys was fraudulent, Pawleys could not give Kennedy a valid mortgage as to an existing creditor. Sapp cites to *Rilling v. Schultze*, 67 S.W. 401 (Texas 1902), in support of his assertion. *Rilling* involved a father and son who conspired to keep property out of the hands of the son's ex-wife by transferring it to an individual who knew the circumstances of the divorce. *Id.* at 402-03. Sapp also cites to *Coleman v. Daniel*, 261 S.C. 198, 199 S.E.2d 74 (1973), and *Messervy v. Barelli*, 11 S.C. Eq. (2 Hill Eq.) 567 (1837). Each of these cases involves transactions between close friends or family. Whereas here, the transfer was between an LLC and a corporation.

Kennedy argues that prior to closing the loan with Pawleys, it conducted a title search that revealed a $300,000 mortgage lien held by First South Bank on Lot 3, and it arranged to have the lien paid at closing. It asserts no other lien appeared on the title search and no *lis pendens* attached to the property. Kennedy further received a letter from counsel for Pawleys and Wheeler-Cribb, dated April 30, 2009, which stated in part that "[t]here is no action, suit, proceeding or investigation at law or in equity by or before any court, governmental instrumentality or other agency now pending or, to the best of our knowledge, threatened against the Borrower or the Guarantors or any of the Borrower's or Guarantor's properties or rights . . . ." Kennedy testified it would not have closed on the loan if any encumbrances were on the property. Kennedy asserts the transaction cannot be set aside under the Statute of Elizabeth because no conveyance occurred. Pawleys did not sell or convey the land to Kennedy. It borrowed money from Kennedy and used the property as collateral. Kennedy states that "[b]y conflating a mortgage transaction with a sales transaction, [Sapp] presents an absurd argument that would eliminate cash-out, home equity, second mortgage and most primary mortgage lending in South Carolina, because no prudent lender ever loans 100% of the value of the collateral." Kennedy asserts this was an arms-length loan transaction between a lender based in New Jersey and a South Carolina limited liability company with no prior relationship; no property was sold or transferred to Kennedy; and Pawleys was not insolvent when the loan was executed, retaining more than $1.3 million in cash and equity from the transaction alone.

The master determined (1) the mortgage between Kennedy and Pawleys was an arms-length transaction and no familial or prior business relationship existed between Pawleys and Kennedy; (2) valuable consideration existed to support the

mortgage; (3) Sapp failed to prove by clear and convincing evidence that Kennedy participated in a fraudulent scheme; and (4) Kennedy was a good faith purchaser for value when it entered into the mortgage agreement with Pawleys and did not participate in a plan to defraud Sapp.  Although the underlying action was brought by Sapp against Wheeler in 2008, the judgment was not rendered until June 4, 2010, fourteen months after Pawleys recorded its loan with Kennedy.  Also, Sapp did not file a *lis pendens* on the property, which would have protected his interests.  Thus, we find the transfer from Pawleys to Kennedy was not a fraudulent transaction.

### III.    Voiding of Mortgage

Sapp argues the master should have set aside the mortgage as a fraudulent conveyance or declared Kennedy's lien was subordinate to Sapp's lien on the property.  We disagree.

Sapp asserts Kennedy loaned less than 50% of the property's value to Pawleys and took a mortgage on the property, despite its knowledge that (1) the property was being transferred by quitclaim deed; (2) Wheeler was the sole owner of the property; (3) Wheeler was transferring the property for no consideration to Pawleys; (4) Pawleys was a family owned limited liability company in which Wheeler held a 99% membership interest; and (5) Wheeler was indebted to an existing creditor.  Therefore, Sapp maintains Kennedy participated in Wheeler and Pawleys' fraudulent scheme and Pawleys could not give Kennedy a valid mortgage as to an existing creditor.  Further, Sapp asserts the mortgage of property valued at $1.92 million for a $774,000 loan was not a fair price.  As a result, Sapp argues the mortgage should be set aside as a fraudulent conveyance or declared subordinate to Sapp's lien on the property.

Kennedy argues it filed its mortgage fourteen months before Sapp obtained his judgment against Wheeler; thus, it has a superior lien.  Kennedy asserts it (1) loaned almost $1 million in an arms-length mortgage transaction; (2) performed a proper title search and paid off the one recorded lien at closing; and (3) properly filed its mortgage in the Office of the Registrar of Deeds in Georgetown County.

In *Atlas Supply Co. v. Davis*, 273 S.C. 392, 392-93, 256 S.E.2d 859, 859 (1979), the appellant held a recorded judgment lien, and the respondent, a bank, held a recorded mortgage lien over real property.  The bank's mortgage was filed about two hours after the filing of appellant's judgment.  *Id.* at 393, 256 S.E.2d at 859.

The appellant brought the action to determine which lien had priority.  *Id.*  Our supreme court held that when the debt upon which the judgment was entered was antecedent to the creation of the mortgage obligation, the recorded judgment lien was not within protection of the recording statute, and thus, the mortgage lien had priority over judgment lien.  *Id.* at 394-95, 256 S.E.2d at 860.  The decision was based on the "basic concept and structure of the recordation statute as protecting subsequent creditors rather than one whose original debt was antecedent in time to the mortgage obligation."  *Id.* at 395, 256 S.E.2d at 860.

Thus, because we find Kennedy's mortgage was not a fraudulent conveyance, we find Kennedy's lien had priority over Sapp's lien on the property.

**CONCLUSION**

Accordingly, the master's order is

**AFFIRMED IN PART AND REVERSED IN PART.**

**HUFF, SHORT, and KONDUROS, JJ., concur.**