**In re George Edward BLOUNT, Janet M. Blount, Debtors.**

**Bankruptcy No. 379–01806.**

United States Bankruptcy Court, M. D. Tennessee.

March 11, 1980.

**3.** *Lee, Chapter 13 nee Chapter XIII,* 53 Am. Bankr.L.J. 303, 313 (1979).

Leon Perry, Ashland City, Tenn., for debtors.

Robert Ziegler, Nashville, Tenn., for City Finance.

### ORDER

PAUL E. JENNINGS, Bankruptcy Judge.

There is before the court the application of the debtors George Edward Blount and Janet M. Blount (debtors) and a creditor City Finance Company, Inc. (City) to reaffirm a debt with City. The debt is in the amount of $1,820.25 and is secured by a 1971 Ford and household goods. The parties agree that the value of the automobile is $600.00. It is not contested the lien on the household goods may be avoided under 11 U.S.C. § 522(f). Thus, we have a reaffirmation agreement binding the debtors to pay $1,820.25 for collateral valued at $600.00.

The issue is whether this agreement should be approved under the provisions of 11 U.S.C. § 524(c) and (d). Section 524(c) establishes four conditions requisite for a binding reaffirmation agreement.

First, the new agreement must be made before the granting of the discharge. Such was done in this case as above outlined. It should be added that the agreement provides the payments will be as before bankruptcy, that is, the same amount of the debt, on the same monthly terms. There are no new finance or interest charges.

Second, the section provides that the agreement is valid only if the debtor does not rescind the agreement within 30 days of the agreement becoming enforceable. Clearly, the agreement has not yet become enforceable and thus, the rescission provision is not yet applicable.

Third, it is required the provisions of subsection (d) of section 524 have been complied with. Subsection (d) requires the debtor to appear at a hearing before the court. At this hearing the court shall inform the debtor as to the granting or denial of a discharge and relevant to this case, if reaffirmation is desired the court must inform the debtor: (a) the reaffirmation agreement is not required and (b) the legal effect of the agreement and the consequences of a default under the agreement. It is apparent that Congress desired that debtors understand their listed debts were discharged, unless excepted by a previously filed action; that debtors know creditors can not seek to collect those debts; that debtors be aware there is no obligation to renew any debt; and that if the debtors voluntarily renew the obligation, the consequences of such renewal. The debtors must understand renewal would negate the benefits of discharge and would subject them to the usual collection procedures.

Fourth, for the agreement to be valid, if it is a consumer debt not secured by real property, the court must approve the agreement on either of two bases: (A) it does not impose an undue hardship and is in the best interest of the debtor; or (B) has been entered in good faith and is in settlement of litigation objecting to the dischargeability of the debt or is providing for redemption of the property under 11 U.S.C. § 722.

The difficulty presented the court is in the application of the fourth factor. Perhaps it is instructive to consider the background of these legislative provisions.

The Report of the Commission on the Bankruptcy Law of the United States identified the reaffirmation problem and made recommendations as follows:

The present Act does not attempt to deal with the problems of reaffirmation of discharged debts. Substantial evidence of the use of reaffirmations to nullify discharges has come to the Commission's attention. To the extent reaffirmations are enforceable, the "fresh start" goal of the discharge provisions is frustrated. Reaffirmations are often obtained by improper methods or result from the desire of the discharged debtor to obtain additional credit or continue to own property securing a discharged debt. The Commission has recommended that the reaffirmation of a secured debt be enforceable but only to the extent of the fair market value of the property at the date of the petition. The Commission also recommends that a discharge extinguish all nonexcepted debts, reaffirmations be made unenforceable, and as under the present law, a judgment for a discharged debt be null and void. H.R.Doc. No. 93–137, 93d Cong., 1st Sess. at 177 (1973).

In H.R.Rep. No. 95–595, 95th Cong., 1st Sess. (1977) submitted in support of H.R. 8200 the committee gave detailed consideration to the reaffirmation problem. The report recognizes that "unsuspecting debtors are led into binding reaffirmations, and the beneficial effects of a bankruptcy discharge are undone." It was recognized that the debtors and creditors were not in equal bargaining positions and "the creditors' superior experience in bankruptcy matters still lead to reaffirmations too frequently."

In the Report a number of additional reasons were given for reaffirmation of debts. First, it was noted some debtors reaffirm because of a threat to damage the debtor's personal or credit reputation by letters to employers or phone calls to friends. Second, debtors reaffirm in order to obtain new loans from the lender whose loan has been discharged. Third, reaffir-

mations result from the threat of repossession. Fourth, reaffirmations occur because of false financial statements given by the debtor but which have been encouraged by the creditor. Fifth, the debt is reaffirmed because a friend or relative has cosigned.

Various provisions of the Code address the specific problems above numerated. For example, the stay and discharge provisions clearly address contact with employers and friends, 11 U.S.C. §§ 362, 524; provisions for redemption may act to minimize repossession threat, 11 U.S.C. § 722, or filing under the provisions of Chapter 13 may deal with repossession problems;[1] objections to dischargeability of debts for false financial statements have been limited to the particular debt, 11 U.S.C. § 523(a)(2), with serious consequences for the creditor as to costs if the objection is unsuccessful, 11 U.S.C. § 523(d); and protection is offered to persons with cosigned debts by specific provisions applicable in Chapter 13.

To further implement control of reaffirmations H.R. 8200 provided:

(b) After the commencement of a case under this title, a creditor may not enter into an agreement with the debtor the consideration for which in whole or in part is based on a debt of the debtor that is dischargeable in a case under this title, whether or not discharge of such debt is waived. Any such agreement is void.

(c) Notwithstanding subsection (b) of this section and sections 727, 1141, and 1328 of this title, an agreement of the kind specified in subsection (b) of this section that is entered into in good faith and that is approved by the court is enforceable only if such agreement is—

(1) in settlement of litigation under section 523 of this title; or

(2) an agreement providing for redemption under section 722 of this title.

The comment in the report details the goal of the provision.

The bill makes void any agreement that contains a reaffirmation of a discharged debt, and prohibits a creditor from entering into such an agreement. The consumer finance industry strongly opposes this provision. It has argued that debtors frequently voluntarily repay debts, and that debtors should not be prohibited from repaying discharged debts, out of a sense of moral obligation or for other reasons. "Voluntary", however, is somewhat euphemistic, and often has led to court action to enforce "voluntary" repayments. The bill recognizes the truly voluntary situation and permits legitimately voluntary repayments, but denies creditors court process to enforce a reaffirmation, other than under a nondischargeability or redemption agreement. H.R. 8200 guarantees that debtors may repay a portion or all of a discharged debt in a voluntary situation, without any fear of reaffirming the whole of the debt and being subject to the same court process that resort to the bankruptcy laws was designed to prevent.

This provision is a significant factor in making bankruptcy relief an effective remedy. It ensures that a debtor will not come out of bankruptcy in the same situation as when he went in. It contributes to the debtor's fresh start. The provision prevents creditor experience in handling bankrupt debtors from overwhelming inexperienced debtors that are in a severely disadvantaged bargaining position after bankruptcy. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 164 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6125.

The House Report summarized the intent of section 524 as follows:

---

1. The court must entertain the idea that a Chapter 13 proceeding is more suited for the situations involving renewal of debts. There the opportunity exists to rewrite contracts, extend and lower payments, and obtain a greater control over interest and financing charges. The legislative history indicates Congress recognized Chapter 13 as a solution to certain repossession and reaffirmation problems. In any renewal situation the question is presented why not file a Chapter 13? However, Congress has not made that chapter exclusive for such situations. Section 524 is applicable in Chapter 7. Congress has said the debtor may renew in Chapter 7 if all criteria are satisfied.

Subsection (a) specifies that a discharge in a bankruptcy case voids any judgment to the extent that it is a determination of the personal liability of the debtor with respect to a prepetition debt, and operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, including telephone calls, letters, and personal contacts, to collect, recover, or offset any discharged debt as a personal liability of the debtor, or from property of the debtor, whether or not the debtor has waived discharge of the debt involved. The injunction is to give complete effect to the discharge and to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts. This paragraph has been expanded over a comparable provision in Bankruptcy Act § 14f to cover any act to collect, such as dunning by telephone or letter, or indirectly through friends, relatives, or employers, harassment, threats of repossession, and the like. The change is consonant with the new policy forbidding binding reaffirmation agreements under proposed 11 U.S.C. 524(d), and is intended to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it. In effect, the discharge extinguishes the debt, and creditors may not attempt to avoid that. The language "whether or not discharge of such debt is waived" is intended to prevent waiver of discharge of a particular debt from defeating the purposes of this section. It is directed at waiver of discharge of a particular debt, not waiver of discharge in toto as permitted under section 727(a)(9).

\* \* \* \* \* \*

Subsection (b) gives further effect to the discharge. It prohibits reaffirmation agreements after the commencement of the case with respect to any dischargeable debt. The prohibition extends to agreements the consideration for which in whole or in part is based on a dischargeable debt, and it applies whether or not discharge of the debt involved in the agreement has been waived. Thus, the prohibition on reaffirmation agreements extends to debts that are based on discharged debts. Thus, "second generation" debts, which included all or a part of a discharged debt could not be included in any new agreement for new money. This subsection will not have any effect on reaffirmations of debts discharged under the Bankruptcy Act. It will only apply to discharges granted if commenced under the new title 11 bankruptcy code.

Subsection (c) grants an exception to the anti-reaffirmation provision. It permits reaffirmation in connection with the settlement of a proceeding to determine the dischargeability of the debt being reaffirmed, or in connection with a redemption agreement permitted under section 722. In either case, the reaffirmation agreement must be entered into in good faith and must be approved by the court. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 365–366 (1977), U.S.Code Cong. & Admin.News 1978, p. 6321.

The language of the Senate version of the bill, S.2266, is identical to that of H.R. 8200. The legislative comments are similar.

The floor debate on amendments to S.2266 held on September 7, 1978, is instructive. Senator Bartlett from Oklahoma sought to reinstate language in the bill that would enable voluntary reaffirmations of debts subject to a rescission right of 30 days. Senator Bartlett's amendment would substitute for the above quoted provisions as follows:

(b) A debt extinguished by discharge in a case under this title may be revived or reaffirmed by written instrument or be all or part of any bargain creating a new debt except, however, the debtor may rescind his revival or reaffirmation by written notice to all concerned creditors within 30 days of such revival or reaffirmation. Any judgment, whenever obtained, that a debtor is personally liable to pay a debt extinguished by discharge, and not revived or reaffirmed in accordance with this section, is null and void.

Senator Bartlett in commenting on the amendment stated:

Rather than adopt an absolute ban on all reaffirmations, as S.2266 purposes, my amendment provides a compromise adopted by the subcommittee which held hearings and studied the measure.

It is a simple, direct, approach which will protect the legitimate interests of consumers and creditors alike. It would allow, but not require, reaffirmation; it would permit a debtor 30 days to change his mind.

\* \* \* \* \* \*

As a practical matter, thousands upon thousands of bankrupts reaffirm or revive debts with creditors each year for amounts totalling many millions of dollars. They do so voluntarily because they know it is to their advantage. I believe consumers should be able to retain that right. I also believe creditors should be able to recoup some of their losses. What is wrong with reaffirmation if it is voluntary?

\* \* \* \* \* \*

The record clearly shows that a major percentage of consumer bankruptcies are caused by a single, overwhelming debt such as a medical bill. Debtors may seek relief from such crushing medical expenses but wish to honor other obligations and retain their credit worthiness with those whom they have dealt with in the past—and with whom they wish to deal in the future. The committee bill denies consumers the right to voluntarily and selectively reaffirm. It denies consumers the right to dispose of their future income as they see fit. There is no justification for this interference. It smacks of paternalism. 124 Cong.Rec. S14723 (Daily Ed. Sept. 7, 1978) (Remarks of Sen. Bartlett).

Concern was expressed that the existing provisions limited the reaffirmation in three areas: the debtor's home, non-exempt personal property and all intangible property. *See generally* 124 Cong.Rec. S14723 (Daily Ed. Sept. 7, 1978) (Remarks of Sen. Bartlett).

The proposed amendment passed the Senate.

On September 28, 1978, the House adopted amendments which included section 524 in its present form. The comments of Congressman Edwards regarding the relevant portions of section 524 are as follows:

Sections 524(c) and (d) represent a compromise between the House bill and Senate amendment on the issue of reaffirmation of a debt discharged in bankruptcy. Every reaffirmation to be enforceable must be approved by the court, and any debtor may rescind a reaffirmation for 30 days from the time the reaffirmation becomes enforceable. If the debtor is an individual the court must advise the debtor of various effects of reaffirmation at a hearing. In addition, to any extent the debt is a consumer debt that is not secured by real property of the debtor reaffirmation is permitted only if the court approves the reaffirmation agreement, before granting a discharge under sections 727, 1141, or 1328, as not imposing a hardship on the debtor or a dependent of the debtor and in the best interest of the debtor; alternatively, the court may approve an agreement entered into in good faith that is in settlement of litigation of a complaint to determine dischargeability or that is entered into in connection with redemption under section 722. The hearing on discharge under section 524(d) will be held whether or not the debtor desires to reaffirm any debts. 124 Cong.Rec. H11096 (Daily Ed. Sept. 28, 1978) (Remarks of Cong. Edwards).

On October 6, 1978, the Senate adopted section 524 in its present form. The same comments were made in the Senate debate. 124 Cong.Rec. S17413 (Daily Ed. Oct. 6, 1978) (Remarks by Sen. DeConcini).

As noted, an attempt was made to significantly amend the provisions of S.2266 and the attempt was temporarily successful. The amendment would allow reaffirmation of any debt but would allow rescission within 30 days. It is clear from the amendment and the comments of the Senator that he

sought the right of voluntary reaffirmation; stressed the rights of creditors; and was critical of the "paternalism" of the S.2266 approach.

What effect did this have on the final version of the section? An honest evaluation leads to the conclusion that the final language is basically a restatement of the H.R. 8200 and S.2266 language with inclusion of absolute right of renewal of debt secured by real property and with a 30 day rescission right.

The language of all the drafts of the legislation and the Reports submitted with the legislation establish the Congressional concern. The unmistakable conclusion is that "fresh start" should not be frustrated by reaffirmation. The debtor must not come out of bankruptcy in the same debt condition as when he went in. Achievement of that goal was to be obtained by making all unsecured dischargeable debt discharged and reaffirmations of dischargeable debt unenforceable. Secured debts could be reaffirmed to the extent of the fair market value of the collateral. See the provisions of H.R. 8200 and S.2266, *supra.* Congress recognized a debtor's right to make voluntary payments but ensured payments would be truly voluntary, and remained voluntary, by removing the reaffirmation possibility.

The statute as enacted retained the language regarding renewal of secured debt. Clearly the voluntary payment without renewal is present. The "compromise" provisions regarding unsecured debt as finally enacted provide the reaffirmation must satisfy the "best interest" *and* "undue hardship" test. Section 524(c)(4)(A)(i) and (ii). In light of the legislative history, how can such tests be satisfied if reaffirmation of an unsecured debt is sought? Indeed, the circumstances must be unusual to allow a party to reaffirm a debt not secured by any

property and the debtor has no legal obligation to pay. That issue is not in this case.[2]

Applying the § 524(c)(4)(B) criteria, the court cannot approve renewal. Initially, there is no suggestion a dischargeability issue is presented. Thus, the only remaining basis for the agreement is for redemption of the property under 11 U.S.C. § 722.

11 U.S.C. § 722 provides:

An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

It is apparent from the statute that the elements for redemption are: (1) tangible personal property; (2) intended for personal, family or household use; (3) covering a dischargeable consumer debt; and (4) the property is exempt or has been abandoned. Each element is satisfied herein. The issue then becomes the amount necessary to effect redemption. The statute clearly answers: The redemption is accomplished by paying the holder of the lien the amount of the allowed claim secured by the lien. The allowed claim is the value of the collateral. 11 U.S.C. § 506.

The value of the collateral herein is $600.00. It seems logical the contract could allow for the inclusion of reasonable interest charges. We do not reach the issue of the amount of such charges as in this case we are dealing with a proposed contract in an amount far in excess of the allowed secured claim, plus reasonable interest.

**2.** Should it be argued that § 524(c)(4)(A) is applicable to secured debt, it is not convincing herein. There have been no facts presented to convince the court it is in a debtor's "best interest" to renew a debt of $1,800 when collateral is worth only $600. First, as above noted, the Legislative History convinces me these

debts must be considered under § 524(c)(4)(B). Second, if this construction is incorrect, it cannot be in the debtor's best interest to carry such a deficiency out of bankruptcy. The debtor will come out of bankruptcy in the same shape debtor came in.

Thus, the agreement presented is not an agreement providing for redemption of property.

The reaffirmation agreement cannot be approved under any statutory standard.

It is so ORDERED.