## BLOHME v. LYNCH.

1. A judgment entered in October, 1866, had priority of lien over a mortgage given in September, 1866, but not recorded until January, 1867.

2. The trial judge may determine whether there is any testimony pertinent to an issue involved, and if there be none, may instruct the jury as to the legal consequences of its absence. Thus, there being no testimony of any agreement on the part of a purchaser under a junior lien to preserve senior liens, the judge did not err in refusing to submit to the jury the question whether the prior liens had been preserved.

3. Where plaintiff claimed land through a purchase under a junior judgment, and defendant through a subsequent sale under a senior judgment against the same person, whether the purchaser at the first sale knew of an intermediate mortgage was wholly irrelevant to the issue.

4. A sale by the sheriff under a junior judgment divests the lien of a senior judgment.

5. A grantor, as against her grantee, is not an incompetent witness under section 400 of the Code, to prove the declarations of one deceased, under whom both parties to the cause derived their title.

6. But as the rights of the parties depended upon written instruments, such testimony would have been immaterial, and therefore its rejection furnishes no ground for a new trial.

Before WALLACE, J., Charleston, March, 1886.

Action by Dorothea Blohme against Mary E. Lynch, commenced December 3, 1885. The opinion states the case.

*Mr. W. M. Thomas*, for appellant.

*Messrs. Simons & Cappelmann*, contra.

March 17, 1887: The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. The plaintiff, respondent, brought the action below to recover a house and lot situate in the city of Charleston. It is conceded that one W. B. Ryan was at one time the owner of the premises. While he held possession, he confessed a judgment to W. K. Ryan, October 3, 1866, and mortgaged the property to P. H. Ryan, trustee, September 17, 1866, recorded January 30, 1867, more than 60 days having elapsed, which gave the judgment confessed October 3, 1866, priority. This mortgage was marked satisfied September 1, 1870, and after this mortgage was executed the People's National Bank of Charleston recovered a judgment against him, June 14, 1867. Under execution issued upon this latter judgment, the premises were levied and sold by the sheriff of Charleston on June 6, 1870, at which sale Mary A. Ryan, the wife of W. B. Ryan, became the purchaser at the price of $1.

After Mrs. Ryan bought she mortgaged the premises to the City Council of Charleston to secure a loan of $1,500, under the fire loan act. This mortgage was foreclosed, and at foreclosure sale on April 9, 1885, the plaintiff became the purchaser, and the defendant having entered into possession, the action below was brought to recover the property.

The defendant claims under W. B. Ryan also, as follows: Some time after Mary A. Ryan had bought, as stated above, W. B. Ryan being dead, the judgment against him, confessed October 3, 1866, to W. K. Ryan, and which had been the oldest lien on the premises, was revived against his heirs, to wit, in May, 1885, upon which execution was issued, and a sale made by the sheriff to the said W. K. Ryan, June 6, 1885, who conveyed to the defendant, October 14, 1885. In the meantime the intermediate mortgage had been marked satisfied. See *City Council v. Ryan*, 22 *S. C.*, 339.

At the trial, Mary A. Ryan, introduced by defendant, was held incompetent to testify as to a certain conversation between

herself and her deceased husband, W. B. Ryan, under section 400 of the Code.

His honor, Judge Wallace, presiding, charged the jury as matter of law that the sale under the levy of the People's National Bank, which was the junior lien, related as well to the older judgment, which being older than the mortgage, the sale discharged the premises from all liens, and that therefore Mrs. Ryan bought the entire property free from encumbrance (*Vance & Davis* v. *Red & Young*, 2 *Speer*, 90), and that the subsequent revival of the older judgment against the heirs of W. B. Ryan, whether valid or not, could acquire no lien over said premises, because said property had already been sold once under said judgment. Holding this to be the legal effect of the sale to Mrs. Ryan, he charged that the plaintiff, who claimed directly from her, was entitled to the verdict. And the jury found for the plaintiff. Defendant's counsel asked that the question whether the prior liens had been preserved might be left to the jury. His honor declined this request, saying that there was no proof to that end.

Defendant's appeal raises three questions: 1st. Should his honor have submitted to the jury the question, whether the prior liens had been preserved, as a question of fact. 2nd. Whether his honor erred in charging that a sale under a junior judgment, there being an older judgment and an intervening mortgage, discharged the land from all encumbrance and gave the purchaser complete title. And 3rd. Whether he erred in excluding the testimony of Mrs. Ryan as to the declarations of W. B. Ryan, the common source of title.

Certainly, in the absence of all testimony as to any agreement about preserving the liens prior to that of the junior judgment, the sale thereunder being attributable, as is well sustained by authority, not only to the junior execution, but to the older also (*Vance & Davis* v. *Red & Young*, *supra*), his honor did not err in declining to submit the question, requested by the defendant, to the jury, it being solely and entirely a question of law, to wit, the legal effect of a sale under the circumstances. While a Circuit Judge has no right to consider and weigh testimony introduced in support of an alleged fact, yet he is authorized to determine

whether or not any pertinent testimony has been given in reference to the issues involved, one or all, and to adjudge the legal consequence resulting from the absence of such pertinent testimony, in case there be such absence. Here the judge said there was no proof of any agreement about preserving the prior liens, and we have found no evidence reported directed to that matter. So that there was nothing but a plain question of law before the court, which it was the duty of the judge to decide.

It is urged, however, that Mrs. Ryan testified that she knew of the prior mortgage, and that she bought subject to it. Admit this to be so, yet she had the deed of the sheriff, which conveyed to her the legal title, and whether the mortgagee had any claim on the land or not, after her purchase, was a matter of no consequence to the defendant, and could not affect the legal rights of the parties, both claiming, as they did, from a common source. The question whether Mrs. Ryan bought subject to the mortgage was wholly irrelevant, so far as the defendant was concerned, as she did not claim through or by virtue of the mortgage. Whether Mrs. Ryan had the superior title of the common source, W. B. Ryan, depended upon the question whether the sale to her by the sheriff and the sheriff's deed conveyed said title free of the lien of the older judgment, which was a question of law, and which, if the judge decided correctly, entitled her as matter of law to recover from the defendant regardless of the fact whether the mortgage was unsatisfied or not, or whether Mrs. Ryan bought subject to it or not, so that it was wholly unnecessary to submit that question to the jury.

2nd. As to the second question, whether the sale under the junior judgment divested the lien of the senior judgment, we do not deem it necessary to do more than to refer to *Trumbo* v. *Cumming*, 20 *S. C.*, 336, and the cases there cited, under which Mr. Justice McIver said in that case: "It has been uniformly held in this State that a sale by the sheriff under a junior judgment divests the lien of the senior judgments and confers a good title on the purchaser, the senior judgments being entitled to the proceeds of the sale in the order of their priority."

3rd exception assigns error to his honor in excluding the testimony of Mrs. Ryan as to the declarations of W. B. Ryan,

deceased. If this testimony was excluded as obnoxious to section 400, Code, we think the ground of exclusion was error, as Mrs. Ryan neither had any interest which could be affected by the action, nor was she proposed as a witness against one claiming under and by virtue of belonging to any one of the classes mentioned in the section, and for whose benefit the exclusion is allowed. *Jones* v. *Plunkett*, 9 *S. C.*, 398; *Cantey* v. *Whitaker*, 17 *Id.*, 529. But independent of this, it is apparent that the rights of the parties litigant before the court depended upon the construction of the paper titles under which they respectively claimed, and the effect of the sheriff's deed to Mrs. Ryan, made and executed to her as purchaser, all of which was matter for the court upon the papers themselves, and with reference to which, as it appears to us, no conversation between Mrs. Ryan and her deceased husband could have been relevant. Such being the fact, and it being so clear, that the deed to Mrs. Ryan conveyed to her the land in dispute free from the encumbrance of the older judgment, under which the defendant claims, and the intervening mortgage having been marked satisfied, it would be prolonging this litigation unnecessarily to send the case back on account of the technical error in excluding the wholly immaterial testimony mentioned.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.