## 17405

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, Plaintiff, v. WILFORD E. WADFORD *ET AL.*, Defendants. SAMUEL LEVY, d. b. a. Moore & Company, a Defendant, is Appellant, and The Calhoun Trading Company, a Defendant, is Respondent.

(102 S. E. (2d) 889)

*R. A. Bowman,* Esq., of Orangeburg, *for Appellant,*

*Furman R. Gressette,* Esq., of St. Matthews, *for Respondent,*

April 7, 1958.

LEGGE, Justice.

In an action for foreclosure of a mortgage of real estate respondent, as holder of a junior mortgage, and appellant, as a judgment creditor of the mortgagor, were made parties defendant. The proceeds of the foreclosure were insufficient to pay all liens; and the sole issue involved in this appeal is that of priority between the lien of respondent's mortgage and that of appellant's judgment.

Respondent's mortgage was executed on May 21, 1954, as security for the mortgagor's obligation of the same date. It was recorded on June 21, 1954.

Appellant's judgment was entered of record on May 24, 1954. It was obtained in an action against the mortgagor on an account for merchandise purchased prior to May 21, 1954.

The Special Referee held that the lien of the judgment, having arisen subsequent to the mortgage transaction and prior to the recording of the mortgage, was entitled to priority. The Circuit Judge reversed, upon the authority of *Carraway v. Carraway*, 27 S. C. 576, 5 S. E. 157, 159, and the judgment creditor has appealed.

The identical issue was presented in the *Carraway case*. There the controversy was as to priority between an unrecorded mortgage and certain judgments obtained after, on debts that had been contracted before, its execution, the judgment creditors having had no notice of the mortgage until after their judgments had been entered. The court, discussing the contention that the judgment creditors were "subsequent creditors" within the meaning of the recording act, said:

"It is admitted that the debts upon which the judgments were obtained were, each and all, contracted before the execution of the Hirsch mortgage. It cannot be said, then, that they were subsequent creditors, unless the entry of the judg-

ments made them creditors, which will hardly be claimed. A judgment is the determination of one's rights upon a cause of action which existed before the adjudication, and, although obtained after the cause of action arose, it reflects back, and establishes the right as of the date of its inception, and, having established such right, it affords the means of enforcing redress for the violation thereof. A judgment, therefore, obtained after the execution, of a mortgage, upon a debt contracted before its execution, cannot be said to be a subsequent debt, in the sense of the language of the act".

The *Carraway case* was decided in 1888 by a divided court of three justices. The majority opinion, written by Chief Justice Simpson, was concurred in by Justice McIver. In a vigorous dissent, Justice McGowan urged that a judgment is, for most purposes, to be regarded as a new debt, not affected by the character of the old one; that it is itself a thing of record, having a lien from the date of its entry (Act of Nov. 25, 1873, XV Stat. at L. p. 498, now Section 10-1561 of the 1952 Code) ; and that, if entered subsequent to an unrecorded mortgage of which the judgment creditor had no notice, its holder should be regarded as a subsequent creditor within the meaning of the recording act of 1876.

. *King v. Fraser,* 23 S. C. 543, was concerned with the question of priority as between a mortgage, recorded after the time allowed by the act, and unsecured debts of the mortgagor contracted between the date of the execution of the mortgage and the date of its record. The issue was thus different from that now before us; but it is interesting to note that in that case (where Chief Justice Simpson concurred in Justice McGowan's opinion, and Justice McIver dissented) the majority opinion implied, by way of dictum, that under the recording act as it then stood the mortgage lien would have been subordinate to that of a judgment entered subsequent to its execution and prior to its recording, without regard to the date of the obligation upon which the judgment was founded. To quote from the opinion :

"It is obvious that this postponement of the lien must seriously affect the rights of the mortgagee, especially in respect

to liens which, in the meantime, may have been acquired by others. While the lien of a mortgage not recorded in time is in abeyance for the lack of registry, other creditors of the mortgagor may come in and acquire liens upon his property which will take precedence over the mortgage without regard to its date. This is not expressly declared, but results necessarily from the postponement of the lien of the mort- gage and the general nature of liens as to which time is the essential thing. So far, therefore, as there may be conflict between liens, there is no obscurity, for as to them it is only necessary to inquire which is the first in order of time".

It is to be noted, too, that in *Blohme v. Lynch,* 26 S. C. 300, 2 S. E. 136, where Chief Justice Simpson authored the unanimous opinion, it was held, without mention of the date of the obligation that gave rise to the judgment, that a judgment by confession entered in October, 1866, had priority of lien over a mortgage given in September, 1866, but not recorded until January, 1867.

But whatever may have been the view of the court ■ prior to *Carraway v. Carraway, supra,* the decision in that case appears to have settled the point. It declared, in effect, that the recording statute was intended to protect, against the lien of an unrecorded mortgage, persons who, without notice of it, subsequent to its execution might reasonably have extended credit to the mortgagor, or purchased the mortgaged property, in reliance upon his apparently unencumbered ownership, *Carroll v. Cash Mills,* 125 S. C. 332, 118 S. E. 290; and that a creditor who between the date of the execution of the mortgage and the date of its record entered judgment against the mortgagor on an obligation that had been created prior to the date of the mortgage was not within the protection of the statute because his extension of credit to the mortgagor was antecedent, not subsequent, to the execution of the mortgage.

The rule announced in the *Carraway case* was expressly reaffirmed in *Armstrong v. Carwile,* 56 S. C. 463, 35 S. E. 196. There the issue was as to priority between a mortgage

and a judgment entered after its record, the judgment being based on a note executed between the date of the mortgage and the date of its record. The note, having been given for a debt contracted before the execution of the mortgage, was held not a subsequent obligation within the meaning of the recording act.

The precise issue which we are now concerned does not appear to have been involved in any of our later decisions; but the *Carraway case* has been cited and the rule there announced has received approval in the following cases:

*McGhee v. Wells,* 57 S. C. 280, 35 S. E. 529, 76 Am. St. Rep. 567, where a purchaser at an execution sale under a judgment, obtained after belated record of a deed, based upon a debt arising prior to the date of the deed, was held not a "subsequent purchaser" within the meaning of the act.

*Williams v. Jones,* 74 S. C. 258, 54 S. E. 558, where the controversy was between the holder of a mortgage dated January 5, 1887, recorded November 4, 1891, and the grantee of one who, without notice of the mortgage, had purchased the mortgaged property at a sale under execution on November 4, 1889, issued on a judgment entered on May 14, 1889, upon a debt contracted in 1885. There the court declared that if the question had been merely one of priority between the judgment and the mortgage, the mortgage would have taken priority under the rule of the *Carraway case.*

In *McCandless v. Klauber,* 158 S. C. 32, 155 S. E. 141, it was held that the assignee of a judgment entered in October, 1922, was entitled to priority over the holder of a mortgage dated in January, 1920, but not recorded until February, 1923. But there is nothing in the opinion in that case to suggest that the obligation upon which the judgment was founded had arisen prior to the date of the mortgage obligation; and therefore that decision cannot be taken as indicating departure from the Carraway rule. Nor does the holding in the recent case of *South Carolina National Bank v. Guest,*

S. C., 102 S. E. (2d) 215, where the subsequent lien was given to secure a contemporaneous obligation, conflict with that rule.

Appellant urges that the decision in *Carraway v. Carraway, supra,* was unjust and based upon an erroneous construction of the recording statute, and that we should now reverse it and adopt the construction contended for in the dissenting opinion in that case. But the contrary interpretation placed upon the recording act in the *Carraway case,* and subsequently approved in the cases before mentioned, has become, in effect, a rule of property in this jurisdiction. "When a principle is once adopted and declared by the courts, the people have a right to regard it as just declaration of the law, and to regulate their actions and contracts thereby. * * * There should never be a disturbance of the same, except upon urgent reasons and a clear manifestation of error". Cooley, Constitutional Limitations, cited in *Lillard v. Melton,* 103 S. C. 10, 87 S. E. 421, 427. As was said in *Elkin v. Southern Railway,* 156 S. C. 390, 153 S. E. 337, 339, "it should require circumstances of a very strong and controlling character to induce the court to reverse a rule long in existence in this state in regard to property". And in *Alexander v. Hunnicutt,* 196 S. C. 364, 13 S. E. (2d) 630, 632: "It is manifestly in the public interest that the law remain permanently settled. Especially is this so in the construction of statutes, for if any change in the statutory law is desired, the General Assembly may readily accomplish it."

Affirmed.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.