In re Thomas William GLYNN, and Catherine Brigat Glynn, Debtors.

**HOUSEHOLD FINANCE CORPORATION,**
**Plaintiff,**

v.

**Thomas William GLYNN, and Catherine Brigat Glynn, Defendants.**

In re Russell MORRIS, Jr., and Judythe Ann Morris, Debtors.

**HOUSEHOLD FINANCE CORPORATION,**
**Plaintiff,**

v.

**Russell MORRIS, Jr., and Judythe Ann Morris, Defendants.**

**Bankruptcy Nos. 80–00574, 80–00751.**

United States Bankruptcy Court,
D. South Carolina.

Aug. 13, 1981.

R. Michael Drose, Charleston, S. C., for plaintiff.

Charles S. Altman, Charleston, S. C., for defendant.

## ORDER

J. BRATTON DAVIS, Bankruptcy Judge.

These adversary proceedings require this court to rule upon the constitutional validity of the application of Section 522(f)(2) of the Bankruptcy Code, 11 U.S.C. § 522(f)(2),[1] to avoid security interests created prior to November 6, 1978, the date upon which the President signed the Bankruptcy Reform Act of 1978 (Public Law 95–598) which enacted the Bankruptcy Code. The plaintiff in each of the proceedings holds a nonpossessory nonpurchase-money security interest that impairs the defendants' exemptions of household goods within the scope of section 522(f)(2)(B). Nevertheless, the plaintiffs argue that because they acquired their security interests prior to November 6, 1978 to allow the debtors to avoid the security interests would violate the Due Process Clause of the fifth amendment.[2]

Because this litigation drew into question the constitutionality of an Act of Congress affecting the public interest, this court gave the Attorney General the opportunity to

---

1. 11 U.S.C. § 522(f)(2) states:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (h) of this section, if such lien is

. . . . .

(2) a nonpossessory, nonpurchase-money security interests in any

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

2. "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." U.S.Const. Amend. V.

intervene mandated by 28 U.S.C. § 2403. The Attorney General declined the invitation to intervene.

The facts in these two proceedings are not in dispute. In *Glynn* the essential facts are as follows: On April 28, 1977 defendants executed a note and security agreement in favor of the plaintiff under which the defendants borrowed $2,724.83. The security agreement granted the plaintiff a nonpossessory nonpurchase-money security interest upon all of the defendants' consumer and household goods. The plaintiff properly perfected its security interest.

On July 30, 1980 the defendants petitioned for relief under Chapter 7 of the Bankruptcy Code. The defendants claimed as exempt the property which is the collateral for the plaintiff's loan. The plaintiff commenced this proceeding by seeking relief from the automatic stay in order to enforce the security interest. In response the defendants contend that plaintiff's security interest was void under 11 U.S.C. § 522(f)(2).

In *Morris* the essential facts are as follows: On June 18, 1978 the defendants executed a note and security agreement in favor of the plaintiff under which the defendants borrowed $4,687.80. The security agreement granted the plaintiff a nonpossessory nonpurchase-money security interest in all of the defendants' consumer and household goods. The plaintiff properly perfected its security interest.

On September 26, 1980 the defendants petitioned for relief under Chapter 7 of the Bankruptcy Code. The defendants claimed as exempt the property which is the collateral for the plaintiff's loan. The plaintiff commenced this proceeding by seeking relief from the automatic stay in order to enforce its security interest. In response, the defendants contend that plaintiff's security interest is void under 11 U.S.C. § 522(f)(2).

The parties stipulate that 11 U.S.C. § 522(f)(2) applies retroactively to security interests created prior to November 6, 1978, the date on which the President signed the Bankruptcy Reform Act (Pub. Law 95–598). This stipulation is in accord with the conclusion reached by a majority of courts that have addressed the issue. *See, e. g., Rodrock v. Security Industrial Bank*, 642 F.2d 1193, 1196–97 (10th Cir. 1981); *In re Paden*, 10 B.R. 206 (Bkrtcy.E.D.Pa.1981). Furthermore, this court holds that sections 402(a) and 403 of the Bankruptcy Reform Act mandate the retroactive application of 11 U.S.C. § 522(f)(2).

## ISSUE

The issue presented for decision is whether the application of 11 U.S.C. § 522(f)(2) to enable the defendants to avoid security interests created prior to the enactment of the Bankruptcy Code would violate the fifth amendment. Although a respectable argument can be advanced that this constitutional issue should be resolved under the Just Compensation Clause of the fifth amendment,[3] *see*, Note, *Constitutionality of Retroactive Lien Avoidance Under Bankruptcy Code Section 522(f)*, 94 Harv.L.Rev. 1616 (1981), the parties have argued the issue under the Due Process Clause of the fifth amendment and the court concludes that the present proceedings are properly resolved under the Due Process Clause.

## DISCUSSION

Section 522(f)(2) is a part of an integrated statutory scheme designed to afford debtors "a fresh start in life."[4] The provision operates to achieve this goal by enabling a debtor to avoid nonpossessory nonpurchase-money security interests to the extent the security interests impair exemptions upon certain types of property essential to the well-being of the debtor and his dependents. Thus, section 522(f)(2) enables

---

**3.** "nor shall private property be taken for public use, without just compensation." U.S. Const. Amend. V.

**4.** *See* H.R.Rep.No.95–595, 95th Cong., 1st Sess. 362 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787; *See generally, Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

a debtor to retain these assets free not only from creditors holding unsecured claims, but also from creditors holding claims secured by nonpossessory nonpurchase-money security interests. In essence, section 522(f)(2) advances the fresh start policy of the Bankruptcy Code by depriving a secured creditor of a valid state law property interest and transferring that interest to the debtor.

Plaintiffs do not contend that Congress lacks the power under the Bankruptcy Clause of the Constitution [5] to enact a statute that invalidates state law property interests for the benefit of the debtor. Plaintiff, however, does assert that the application of section 522(f)(2) to avoid a security interest created prior to the enactment of the Bankruptcy Code would violate the Due Process Clause of the fifth amendment. Hence, the plaintiffs contend that as applied to its security interest section 522(f)(2) is unconstitutional and unenforceable.

■ Section 522(f)(2) is a statute that merely adjusts the burdens and benefits of economic life, hence, entitled to a presumption that it does not effect a violation of substantive due process. *Usery v. Tuner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). Furthermore, the presumption of validity is not overcome solely because the statute upsets otherwise settled expectations. *Id.* at 16, 96 S.Ct. at 2892. To establish a due process violation the plaintiffs must establish that Congress acted arbitrarily and irrationally in enacting section 522(f)(2) with retroactive effect. *Id.* at 15, 96 S.Ct. at 2892.

Were this court writing on a clean slate it might be reluctant to find that the application of section 522(f)(2) to preenactment security interests was arbitrary and irrational, because the retroactive application of the provision bears a rational relationship to achieving the proper and laudable purpose of providing debtors with a fresh start in life. This court, however, does not write on a clean slate. The Supreme Court has ruled upon the constitutional validity of

Acts of Congress that provide for the protection and rehabilitation of debtors by impairing security which creditors' acquired prior to the statute's enactment. *See, e. g., Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935); *Wright v. Vinton Branch of Mountain Trust Bank of Roanoke*, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937); In *Radford* and in *Wright* the Court considered statutes enacted under the Bankruptcy Clause that impaired the foreclosure rights of mortgagees holding mortgages upon the farms of debtors. The validity of these statutes was tested under the Due Process Clause of the fifth amendment. In *Radford* the court found the statute in issue operated to impair substantially the value of creditors' preenactment security and held that the statute violated the Due Process Clause. In essence, the Supreme Court appears to have given a precise meaning to the "arbitrary and irrational" standard applicable to statutes that retroactively impair existing security. The position of the Court is that a statute which substantially impairs existing security is arbitrary and irrational; hence, effects denial of due process.

■ Applying these standards for determining the validity of retroactive legislation this court concludes that the application of section 522(f)(2) to security interests created prior to November 6, 1978 substantially impairs the security of plaintiffs. Section 522(f)(2) does not merely delay the secured creditors' attempts to apply collateral toward satisfaction of its debt; the provision deprives the creditor absolutely of the valid state law property interest acquired prior to enactment of the Bankruptcy Code. This court, therefore, concurs with the result reached in *Rodrock v. Security Industrial Bank*, 642 F.2d 1193 (10th Cir. 1981) and holds that the application of section 522(f)(2) to avoid plaintiffs' security interests would violate the Due Process Clause of the fifth amendment.

5. U.S.Const. Art. I, § 8, cl. 4.

■ Although *Louisville Joint Stock Land Bank v. Radford* and *Rodrock v. Security Industrial Bank* control the resolution of this litigation, this court also holds that application of section 522(f)(2) to avoid security interests created prior to November 6, 1978 would violate the Due Process Clause under less rigid standards recently articulated by the Supreme Court for determining the validity of retroactive legislation. *See, United States Trust Company v. New Jersey,* 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977); *Allied Structural Steel Company v. Spannaus,* 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978). In these decisions the court ruled upon the validity of state statutes under the Contract Clause.[6] The Supreme Court, however, has traditionally applied the same standards in determining the validity of retroactive state legislation under the Contract Clause as it has applied in determining the validity of retroactive congressional legislation under the Due Process Clause. For example, during the Great Depression the Supreme Court ruled upon the validity of both state statutes and Acts of Congress that impaired existing rights of mortgagees to foreclose upon their collateral. Although the validity of the state statutes was determined under the Contract Clause and the validity of the Acts of Congress was determined under the Due Process Clause, the court applied the identical "substantial impairment" standard to assess the validity of both state and congressional statutes. *Compare W. B. Worthen Company v. Kavanaugh,* 295 U.S. 56, 55 S.Ct. 555, 79 L.Ed. 1298 (1935) and *Home Building & Loan Association v. Blaisdell,* 290 U.S. 298, 54 S.Ct. 231, 78 L.Ed. 413 (1934) (Contract Clause) *with, Wright v. Vinton Branch of Mountain Trust of Roanoke,* 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937) and *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935) (Due Process Clause). *See generally,* Hale, *The Supreme Court and The Contract Clause: III,* 57 Harv.L. Rev. 852, 890–91 (1944); Hochman, *The Supreme Court and The Constitutionality of Retroactive Legislation,* 73 Harv.L.Rev. 692, 695 (1960). Therefore, this court concludes that it is proper to apply the modern standards developed under the Contract Clause in *United States Trust Company* and *Allied Structural Steel* to litigation in which the retroactive application of an Act of Congress is challenged under the Due Process Clause of the fifth amendment.

In *United States Trust Co. v. New Jersey,* 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977) the Supreme Court held that a state statute eliminating an important security provision of bonds upon which the state was obligated violated the Contract Clause. The Court asserted that it could sustain the impairment as constitutional only if it "was both reasonable and necessary to serve the admittedly important purposes claimed by the state." 431 U.S. at 29, 97 S.Ct. at 1521. The Court further asserted that the necessary requirement was not met if the state could have achieved its goal by a less drastic modification of the creditors security or by alternative means without alteration of the creditors' security. 431 U.S. at 29–31, 97 S.Ct. at 1521–1522.

In *Allied Structural Steel Company v. Spannaus,* 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978) the court extended the "reasonable and necessary" standard to legislation that affected the obligation under contracts to which the State was not a party. The court asserted that the severity of the impairment inflicted by the state statute determines the nature of the court's inquiry. The court stated

"Minimal alteration of contractual obligation may end the inquiry .... Severe impairment, on the other hand, will push the inquiry to a careful examination of the nature and purpose of the state legislation." 438 U.S. at 245, 98 S.Ct. at 2723.

In *Allied Structural Steel* the court found that the statute in issue severely impaired contractual obligations because the aggrieved party had "relied heavily, and reasonably" upon the terms of the contract. Upon finding a severe or substantial impairment of the contractual relationship,

**6.** U.S.Const. Art. I § 10.

the court applied the "reasonable and necessary" standard to determine the validity of the statute. The court concluded, "there is no showing in the record before us that this severe disruption of contractual expectations was necessary to meet an important general social problem" 438 U.S. at 247, 98 S.Ct. at 2724. Therefore, the court held the retroactive statute in issue unconstitutional under the Contract Clause.

The application of the standards developed in *United States Trust Company* and *Allied Structural Steel* to the present case requires this court to make two determinations. First, this court must determine whether the application of section 522(f)(2) to security interests created prior to November 6, 1978 substantially impairs the plaintiffs' security. Second, if this court finds a substantial impairment it must determine whether the retroactive application of section 522(f)(2) passes constitutional muster under the "reasonable and necessary" standard applied under the Due Process Clause.

In extending credit to November 6, 1981 secured by nonpossessory nonpurchase-money security interests the plaintiffs relied upon the right in the event of default to apply the value of their collateral towards satisfaction of their secured debts. This court finds that such reliance was both reasonable and substantial. Therefore, this court concludes that the application of section 522(f)(2) to avoid plaintiffs' security interests effects a substantial or severe impairment of plaintiffs' contractual security.

This court, therefore, must apply the "reasonable and necessary" standard to determine the constitutional validity of the application of section 522(f)(2) to avoid plaintiffs' security interests. Under the "reasonable and necessary" test as advocated by this court an Act of Congress that substantially impairs existing security would not necessarily violate the Due Process Clause of the fifth amendment. If the statute constituted the only practicable method to realize an important congressional goal, this court would sustain the statute against a substantive due process attack. In contrast, if Congress could have achieved the goal by enacting a statute that did not substantially impair creditors' security, this court would be inclined to hold that a statute inflicting substantial impairment on existing security effects denial of substantive due process. This court notes that at least one commentator has argued in favor of a due process analysis similar to that advocated by this court. *See*, Struve, *The Less-Restrictive-Alternate Principle and Economic Due Process*, 80 Harv.L.Rev. 1463 (1967).

Under the "reasonable and necessary" standard the retroactive application of section 522(f)(2) fails to pass constitutional muster. The purpose of section 522(f)(2) is to enable a debtor to realize a fresh start in life when prior to petitioning for relief he has subjected certain exempt property essential to his well-being and that of his dependents to nonpossessory nonpurchase-money security interests. In practice under the Bankruptcy Act of 1898 these security interests gave creditors leverage to frustrate a bankrupt's fresh start. Typically, collateral of the kind specified in section 522(f)(2)(A)–(C) was of little commercial value to the creditor, but if the creditor exercised its right to take possession the bankrupt would be forced to bear high costs in order to replace the essential property. This fact of life in consumer finance enabled creditors to extract from bankrupts reaffirmation agreements had the obvious effect of denying the bankrupt of the benefit of his discharge, frustrating his fresh start in life.

As stated above the retroactive application of section 522(f)(2) is a reasonable method to eliminate the impediments to the fresh start policy emanating from nonpurchase-money security interests. This court does not, however, consider that the retroactive application of section 522(f)(2) is necessary to achieve this goal. Other less drastic methods of achieving this goal were not only available to Congress, but were included in the Bankruptcy Code. Pursuant to

section 722[7] a debtor petitioning for relief under Chapter 7 can retain possession of his exempt personal property free from a security interest securing a consumer debt by paying the creditor the amount of its secured claim. Under section 506(a)[8] the amount of the secured claim is what the creditor would realize on a commercially reasonable disposition of the collateral. In the situations encompassed by section 522(f)(2) the amount of the secured claim typically is nominal, hence, the debtor can redeem and retain the property for a small cash payment. In the event the debtor lacks the cash to redeem the property, section 524(c)(4)(B)[9] authorizes the court to approve a reaffirmation agreement to redeem the property by paying the amount of the secured claim over time. Significantly, the Bankruptcy Code precludes the creditor from binding the debtor to a reaffirmation agreement which requires the debtor to pay more than the amount of the secured claim in order to retain collateral. *See, e. g., In re Blount,* 4 B.R. 92 (Bkrtcy.M.D.Tenn. 1980). Finally, in the event the creditor refuses to enter a reasonable reaffirmation agreement to enable the debtor to redeem the property, the debtor can petition for relief under Chapter 13 and retain the property by invoking the "cram down" provision of section 1325(a)(5)(B).[10]

This court recognizes that from the debtor's perspective the relief available under sections 722, 524(c)(4)(B), and 1325(a)(5)(B) is somewhat less efficient than a retroactive application of section 522(f)(2), because to obtain relief under these provisions the debtor must pay the creditor the value of its security. Nevertheless, this court concludes that the relief afforded by these provisions is effective to realize the fresh

7. 11 U.S.C. § 722 provides

Redemption. An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

8. 11 U.S.C. § 506(a) provides

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interests in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount of subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

9. 11 U.S.C. § 524(c) provides

(c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, wheth-

er or not discharge of such debt is waived, only if

(1) such agreement was made before the granting of the discharge under section 727, 1141, or 1328 of this title;

(2) the debtor has not rescinded such agreement within 30 days after such agreement becomes enforceable;

(3) the provisions of subsection (d) of this section have been complied with; and

(4) in a case concerning an individual, to the extent that such debt is a consumer debt that is not secured by real property of the debtor, the court approves such agreement as

(A)(i) not imposing an undue hardship on the debtor or a dependent of the debtor; and

(ii) in the best interest of the debtor; or

(B)(i) in settlement of litigation under section 523 of this title, or providing for redemption under section 722 of this title.

10. 11 U.S.C. § 1325(a)(5) provides

The Court shall confirm a plan if

(5) with respect to each allowed secured claim provided for by the plan

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and

start policy. Moreover, the alternative method afforded by these provisions realizes the fresh start policy without impairing the essential right of a secured creditor to obtain the value of its collateral. In short, this court finds that in light of the relief available under sections 722, 524(c)(4)(B), and 1325(a)(5)(B) the drastic impairment of secured creditors' rights that would result from retroactive application of section 522(f)(2) is not necessary. Therefore, this court holds that retroactive application of section 522(f)(2) would effect a denial of due process under the "reasonable and necessary" standard.

IT IS, THEREFORE, ORDERED THAT, in each case;

(1) Defendants cannot avoid plaintiff's security interests under 11 U.S.C. § 522(f)(2); and

(2) That the stay imposed under 11 U.S.C. § 362(a) which precludes plaintiff from enforcing its security interests shall remain in effect for 30 days from the date this Order is issued to allow defendants a reasonable time within which to redeem their exempt property from plaintiff's security interests under 11 U.S.C. § 722.