In re Harold R. MAHONEY and wife, Madelyn Ann Mahoney, Debtors.

Harold R. MAHONEY and Madelyn Ann Mahoney, Plaintiffs,

v.

AVCO FINANCIAL SERVICES OF FAYETTEVILLE, INC., Defendant.

In re Douglas Craig ROBINSON and wife, Susan Blair Robinson, Debtors.

Douglas Craig ROBINSON and wife, Susan Blair Robinson, Plaintiffs,

v.

AVCO FINANCIAL SERVICES OF FAYETTEVILLE, INC., Defendant.

Bankruptcy No. C–B–81–396.
Adv. No. 81–0196.
Bankruptcy No. C–B–80–867.
Adv. No. 81–0215.

United States Bankruptcy Court,
W. D. North Carolina,
Charlotte Division.

Nov. 17, 1981.

James C. Hord, Charlotte, N. C., for plaintiff.

J. Michael Booe, Charlotte, N. C., for defendant.

ORDER

MARVIN R. WOOTEN, Bankruptcy Judge.

These matters came on for consideration before the undersigned United States Bankruptcy Judge upon the complaints of the plaintiffs seeking to avoid certain non-possessory non-purchase money liens of Avco Financial Services of Fayetteville, Inc., the defendant in each case. Upon motion of Avco, and without objection, the two referenced proceedings were consolidated for trial, as both contained the identical issue of the constitutionality of Section 522(f) of the Bankruptcy Code, 11 U.S.C. 522(f), the so-called "lien avoidance section."

All parties were represented by counsel at trial. The facts of each case were stipulated by the parties, and it was admitted by Avco that if the section in question were

constitutional as applied to the facts of these cases, then its lien in each case would be avoided. Thus the only issue before the Court for determination is the question of the constitutionality of Section 522(f) as applied to avoid liens created prior to November 6, 1978 (the date of enactment of the Bankruptcy Reform Act of 1978 which contained Section 522(f)—no similar provision was found in the bankruptcy laws prior to that date).

In his clear and thoroughly prepared trial brief, counsel for Avco narrowed the issue even further. He conceded that retroactive application of Section 522(f) (i. e., application of the section to liens created prior to November 6, 1978) "probably does not and is not herein argued to" violate the Due Process Clause of the Fifth Amendment to the Constitution of the United States. (This Court has previously upheld, on due process reasoning, the constitutionality of retroactive application of Section 522(f) in the case of John Joseph Kelly and Patricia Canter Kelly, Case No. C–B–80–00859.) Thus the single issue presented is: Does retroactive application of Section 522(f) violate the takings clause of the Fifth Amendment? (The "takings clause" provides that ". . . nor shall private property be taken for public use without just compensation.")

This Court is very mindful of the myriad of cases that have addressed the complex relationship between the power of Congress to pass laws on the subject of bankruptcies, and the constitutional limitations on that power. The Court is also mindful of the conflicts among the decisions rendered in those cases, and is aware that this decision will most likely only add to the confusion surrounding said relationship. However, it is the duty of this Court to apply the law to the facts of each case, and that duty is in no wise diminished by difficult cases. Herewith the decision on the issue at hand.

Counsel for Avco contends that retroactive application of Section 522(f) is unconstitutional because it amounts to a taking of property without just compensation. Counsel relies heavily on two sources for his argument—the decision of the United States Supreme Court in the case of *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), and an article in the May, 1981 issue of Harvard Law Review, entitled *"Constitutionality of Retroactive Lien Avoidance Under Bankruptcy Code Section 522(f),"* 94 Harv.L.Rev. 1616 (1981). Both sources are persuasive and informative, but this Court is unconvinced that Section 522(f) is unconstitutional when applied retroactively.

The first question this decision will address is retroactive vs. prospective application of Section 522(f). In the *Kelly* case, mentioned earlier (which involved application of Section 522(f) to a lien created after November 6, 1978), the Court stated in a dictum that "without specifically finding so, this Court is of the opinion that Section 522(f) is constitutional as applied to all liens within its purview, whenever created." Counsel for Avco quotes the dictum and then states that the Court's "classical substantive due process analysis" following the dictum is not applicable to analysis of the takings clause. Yet the Law Review article relied on by counsel uses a very similar "classical substantive due process analysis" to justify the conclusion that prospective application of Section 522(f) is not unconstitutional (see 94 Harv.L.Rev. 1629, n. 88, 1636). On page 1629 of his article, the author of the Law Review article justifies prospective application by stating that creditors affected prospectively are not deprived of any rights because they have no rights in the first place. The only basis for that bold statement appears to be that such creditors have had notice of the new law and are not "unfairly surprised" by it. Thus it appears that Avco's position justifies the constitutionality of prospective application on due process grounds. The more illustrative passage appears in the conclusion of said article wherein it is written "[p]rospective application of Section 522(f) passes any *rational basis test.* Creditors taking security interests with *notice* of the statute do not acquire the right to maintain the liens once bankruptcy proceedings commence." (Emphasis added.)

This Court cannot agree that due process analysis can justify prospective application if retroactive application is unconstitutional. The *property* rights acquired by lien creditors before or after November 6, 1978 are identical. Section 522(f) does not declare *all* non-purchase money non-possessory liens void—it affects only certain liens in bankruptcy proceedings. Outside the bankruptcy context, property rights in encumbered property acquired after 1978 are identical to those acquired prior thereto. Thus if retroactive application is unconstitutional because it effects an unjust taking without compensation, it is unconstitutional when applied prospectively for the same reasons. And as discussed below, this Court concludes that any taking that does occur is not unconstitutional.

The real essence of Avco's position, as supported by the Law Review article, seems to be that Section 522(f) deprives it of "the right to maintain the liens once bankruptcy proceedings commence." 94 Harv.L.Rev. 1636. Creditors acquiring liens after 1978 certainly have notice (due process again!) of the fact that they do not have this right. The right is, however, in the nature of a contract right, not a right in specific property; therefore, the taking of this right from pre-1978 lien creditors could arguably be justified with a "classical substantive due process analysis," which, if applicable, is correct, as conceded by Avco in its trial brief. For purposes of this opinion, however, it is assumed that the right to maintain a lien is property, and that that property is taken by application of Section 522(f).

Having found a taking, the next step is analysis of the "public use" requirement of the takings clause. The Supreme Court in *Radford* did not discuss the fact that the "takings" subject to the Fifth Amendment must be for *a public use*. Neither does the defendant's counsel address this point, except to state categorically that Congress enacted Section 522(f) on broad, general public policy grounds. This Court is of the opinion that the "taking" brought about by application of Section 522(f) to avoid a lien within its scope is not a taking for a public use. The immediate and overwhelming effect of lien avoidance under Section 522(f) is to give the debtor an unencumbered interest in the household goods that were previously pledged to the lien creditor. The property rights thus taken are not put to a use that benefits the public generally; on the contrary, the property rights are, in effect, transferred from the lien creditor to the debtor. The taking effected by Section 522(f) is thus for a private, as opposed to a public, use. The important distinction is that the statute was enacted to further public policy as formulated by Congress, but the property rights that are "taken" inure solely to the private benefit of the debtors. But there is a taking nevertheless.

Having found a taking for a private use, the next inquiry becomes the constitutionality of that taking. *Radford*, by its very words, was a pure "takings" analysis—it did not address a taking as an exercise of the general bankruptcy power. The Supreme Court in *Radford* stated "[w]e have no occasion to decide in this case whether the bankruptcy clause confers upon Congress generally the power to abridge the mortgagee's rights in specific property." 295 U.S. at 589, 55 S.Ct. at 863. It appears to this Court that that question is at the very heart of the case at bar. The Court in *Radford* proceeded on the theory that it was not dealing with the bankruptcy power of Congress because the statute there under consideration did not deal with discharge of the debtor. Although Section 522(f) does not specifically deal with discharge, it cannot be seriously contended that the statute in question is not based squarely on the general bankruptcy power of Congress. Thus, since the instant inquiry is as to whether or not the general bankruptcy power confers upon Congress the authority to take certain property rights for private use, *Radford*, which did not address this question, is not controlling and must be strictly limited to its peculiar factual situation.

The final inquiry thus becomes whether or not the enactment of Section 522(f), and

the power of lien avoidance contained therein, is itself constitutional. It is beyond doubt, as admitted by counsel for the defendant, that enactment of the statute complies with all due process requirements. Having met all due process requirements, the only question remaining is whether Congress actually had the power to affect secured debts in the manner that they are affected by Section 522(f). This Court turns for guidance to the opinion of the Fourth Circuit Court of Appeals in *Campbell v. Allegheny Corp.*, 75 F.2d 947 (4th Cir. 1935), a case construing the bankruptcy power of Congress. Being a case concerned with the general bankruptcy power of Congress, *Campbell* is not irreconcilable with *Radford*, which by its terms did not deal with that power. *Campbell* is not, therefore, effectively overruled by *Radford*, as contended by counsel for Avco.

The teaching of *Campbell* as to creditors' liens is very clear. The Fourth Circuit, quoting from *In re Burgh*, 7 F.Supp. 184, 185 (D.C.), stated "[a] secured debt or lien is, so far as the Constitution of the United States is concerned, a no more sacred kind of property than an unsecured debt..... And the Constitution expressly permits and grants to Congress the exercise of the power to affect such property, whether it be an unsecured debt or whether it be a lien, by laws relating to 'subject of bankruptcies.' " 75 F.2d at 954. Therefore, analysis of the retroactive application of Section 522(f) in terms of the bankruptcy power of Congress leads to the unavoidable conclusion that said application is constitutional. In fact, the Supreme Court seemed to anticipate a case such as the one at bar when it wrote "[t]he scope of the bankruptcy power conferred upon Congress is not necessarily limited to that which has been exercised." *Land Bank v. Radford*, 295 U.S. at 587, 55 S.Ct. at 862.

There is a strong presumption as to the constitutionality of the Acts of Congress, and that presumption should not be overlooked or overturned by the Bankruptcy Court except in the most exceptional and flagrant circumstances, and no such circumstances here appear.

The Court's ruling is that the lien of Avco sought to be avoided in each case consolidated for trial herein is in fact avoidable, and shall become finally void upon issuance of a discharge to the debtors in each case.

IT IS SO ORDERED, this 17th day of November, 1981.