**In the Matter of John C. HINSON and Mary W. Hinson, Debtors.**

**John C. HINSON and Mary W. Hinson, Plaintiffs,**

**v.**

**LEXINGTON STATE BANK; Lawrence E. Jacobs and Grover Richey, Citizens and Southern National Bank of South Carolina; and Imperial Realty Co., Inc., Defendants.**

**Bankruptcy No. 81–01269.
Complaint No. 81–0809.**

United States Bankruptcy Court,
D. South Carolina.

April 19, 1982.

Reid Smith, Anderson & Robinson, P. A., Columbia, S. C., for plaintiffs.

Martin H. Kiser, Columbia, S. C., for defendants Lawrence E. Jacobs and Grover Richey.

Benjamin M. Mabry, Cromer, Williamson & Mabry, Columbia, S. C., for defendant Imperial Realty Co., Inc.

## MEMORANDUM AND DECISION

J. BRATTON DAVIS, Bankruptcy Judge.

### FINDINGS OF FACTS

John C. Hinson and Mary W. Hinson, who filed their joint petition for relief under Chapter 13 of the Bankruptcy Code (11 U.S.C. § 1301 *et seq.*) on August 31, 1981, brought this adversary proceeding to avoid the defendants' judgment liens pursuant to 11 U.S.C. § 522(f)(1).[1]

On October 30, 1981, the debtors' Chapter 13 proceeding was voluntarily converted to a case under Chapter 7. (11 U.S.C. § 701 *et seq.*).

In their bankruptcy schedules, the debtors claimed a homestead exemption in their residence in Lexington County, South Carolina. They elected the exemptions provided by S.C.Code § 15–41–200 (Supp.1981) under which each debtor may claim a $5,000 homestead exemption in their residence or a total of $10,000 in this case.

The exemptions claimed by the Hinsons have not been challenged and are allowed as claimed. 11 U.S.C. § 522(*l*).[2]

Prior to the inception of these proceedings, the defendants obtained the following judgments against the plaintiffs:

a. Judgment of Imperial Realty Co., Inc., dated February 20, 1978, in the original sum of $3,059.32, and entered on March 1, 1978, in Judgment Roll # 29889 in the Office of the Lexington County Clerk of Court.

b. Judgment of Lawrence E. Jacobs and Grover C. Richey, dated March 22, 1978, in the original sum of $1,714.14, and entered on March 23, 1978, in Judgment Roll # 30047 in the Office of the Lexington County Clerk of Court.

c. Judgment of Lexington State Bank, dated December 15, 1978, in the original sum of $2,003.25, and entered on January 5, 1979, in Judgment Roll # 32395 in the Office of the Lexington County Clerk of Court.

d. Judgment of the Citizens and Southern National Bank of South Carolina, dated March 23, 1979, in the original sum of $2,294.20, and entered on March 26, 1979, in Judgment Roll # 33051 in the Office of the Lexington County Clerk of Court.

Pursuant to S.C.Code § 15–35–810 (1976), these judgments became liens on the debtors' real estate when entered and indexed upon the book of Abstracts of Judgments in Lexington County, and the liens continue for a period of ten years from the date of the final judgment or decree.

In addition to the above judicial liens, the following mortgages encumber the property:

a. Mortgage of Lomas & Nettleton Company, executed on August 12, 1976, and recorded August 12, 1976, in the Office of the Register of Mesne Conveyance for Lexington County in Mortgage Book 154 at Page 333, with a current balance of $52,958.87.

---

1. 11 U.S.C. § 522(f)(1):
Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—(1) a judicial lien;

2. 11 U.S.C. § 522(*l*) states:

The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. If the debtor does not file such a list, a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor. Unless a party in interest objects, the property claimed as exempt on such list is exempt.

b. Mortgage of John S. Carter, executed on August 12, 1978, and recorded September 1, 1976, in the Office of the Register of Mesne Conveyance for Lexington County in Mortgage Book 157 at Page 342, with a current balance of $2,100.00.

c. Mortgage of Ronald C. Scott and James B. Fields, executed on August 12, 1979, and recorded August 22, 1979, in the Office of the Register of Mesne Conveyance for Lexington County in Mortgage Book 406 at Page 7, with a current balance of approximately $4,500.00.

The above mortgages, encumbering the debtor's residence, total $59,558.87; and the judicial liens, encumbering the residence, total $9,070.94. The mortgage of Ronald C. Scott and James Fields was recorded after the recording of all the judicial liens.

An executed contract for the sale of the residence, for $74,900, is in evidence. The debtors have presented expert testimony that their residence has a fair market value of approximately $75,000. This evidence is uncontradicted.

This court now finds the fair market value of the plaintiffs' residence to be $74,900. Consequently, the debtors have $8,464.42 equity in their residence, computed as follows:

| | |
|---|---|
| $74,900.00 | fair market value of the residence |
| −59,558.87 | the value of the three mortgages |
| − 1,629.59 | the trustee's commission |
| − 5,247.12 | the real estate agent's commission |
| $ 8,464.42 | equity |

The plaintiffs seek to protect this equity in their residence by avoiding the above judicial liens pursuant to § 522(f)(1).

## DISCUSSION AND CONCLUSION

Defendants Lawrence E. Jacobs, Grover Richey, and Imperial Realty Co., Inc., question this court's authority to set aside their judicial liens which have been recorded prior to the recording of the third mortgage held by Scott and Fields.

I

The objection of those defendants is based on S.C.Code § 30–7–10 (1976), which provides, in pertinent part, that

"all deeds . . . all mortgages . . . or other liens on real or personal property or both, created by law or agreement of the parties . . . shall be valid so as to affect the rights of subsequent creditors . . . only from the day and hour when they are recorded . . ."

". . . in case of a subsequent lien creditor on real estate . . . the instrument evidencing such subsequent . . . lien must be filed for record in order for its holder to claim under this section as a subsequent creditor . . . and the priority shall be determined by the time of filing for record."

The defendants are not entitled to the protection of this statute as against the third mortgage holders because the defendants are not subsequent creditors, as contemplated by the statute and defined by case law.

"A judgment is the determination of one's rights upon a cause of action which existed before the adjudication, and, although obtained after the cause of action arose, it reflects back, and establishes the right as of the date of its inception. . . ." *Prudential Insurance Co. of America v. Wadford*, 232 S.C. 476, 102 S.E.2d 889, 891 (1958); citing *Carraway v. Carraway*, 27 S.C. 576, 5 S.E. 157, 159 (1888).

The judgment of Imperial Realty, dated February 20, 1978, was recorded on March 1, 1978. The Jacobs—Richey judgment, dated March 22, 1978, was recorded on March 23, 1978. Both of these judgments were recorded prior to June 12, 1979, the date when the Scott—Fields mortgage (the third mortgage) was executed. While it is not clear as to the exact date when the obligations arose upon which the judgments were rendered, it is clear that these obligations arose prior to the date of the judgments.

In *Prudential Insurance Co. of America v. Wadford*, 232 S.C. 476, 102 S.E.2d 889 (1958), and *Atlas Supply Co. v. Davis*, 273 S.C. 392, 256 S.E.2d 859 (1979), the courts were faced with determining whether a judgment recorded prior in time to a mortgage had priority over the mortgage. In each case the court held that the mortgagees had priority over the judgment creditors due to the fact that the debts upon which the judgments were entered were antecedent to the creation of the mortgage obligation. The *Atlas* court stated that "... The recording statute was intended to protect against the lien of an unrecorded mortgage, persons who, without notice of it, subsequent to its execution might reasonably have extended credit to the mortgagor, or purchased the mortgaged property, in reliance of his apparently unencumbered ownership...." *Atlas Supply Co. v. Davis*, 273 S.C. 392, 256 S.E.2d 859, 860 (1979), citing *Carraway v. Carraway*, 27 S.C. 576, 5 S.E. 157 (1888).

█ Here, the judgments were rendered for debts which arose prior to the creation of the third mortgage obligation. Based upon the authority cited above, this court must hold that the defendants, Imperial Realty Co., Inc., Lawrence E. Jacobs and Grover C. Richey are not such subsequent creditors to the third mortgagees as to entitle them to the protection of S.C.Code § 30–7–10 (1976).

Accordingly, S.C.Code § 30–7–10 does not prevent this court's granting the § 522(f)(1) lien avoidance relief requested by plaintiffs.

## II

Because these judicial liens were created prior to November 6, 1978, the date upon which the President signed the Bankruptcy Reform Act of 1978, this court finds that it must address whether application of § 522(f)(1) to judicial liens created prior to November 6, 1978, would violate the Fifth Amendment to the United States Constitution.

In order to make a determination as to whether there is a violation of due process, this court must first decide whether the property interest involved is worthy of constitutional protection.

A threshold question confronting by the court is: whether the avoiding of these judgments interferes with a property right protected by the Fifth Amendment? "It is clear that the existence of a legitimate property or liberty interest is a prerequisite to the examination of any claimed threat of due process." *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

Reference is made to state law in answering this question. ·

█ At common law, a judgment did not create a lien against a judgment debtor's real property. This has been changed by statute. S.C.Code § 15–35–810 (1976) provides that a judgment shall be a lien on the debtor's real estate only when entered into the book of abstracts and properly indexed in the county in which the land is situated. If the debtor does not own any real estate in the county where the judgment is recorded and indexed, then the judgment is not a lien. *See Earnhardt v. Herring National Lease, Inc.*, 15 B.R. 86, 87 (Bkrtcy., D.S.C. 1981). It must be noted that this code section does not operate to transfer any interest in the debtor's property to the judgment creditor. Such a transfer can only be accomplished by sale pursuant to South Carolina Code § 15–39–10, *et seq.* (1976). If no action is taken within ten years of the date of the judgment, the lien expires. S.C.Code § 15–35–810 (1976).

█ A judgment creditor has no estate or property interest in the land upon which the judgment has become a lien. He stands upon the law, which gives him a remedy for the collection of the debt by a sale of the land under execution. *Lattimore v. Walt's Tree Service, Inc.*, 12 B.R. 111 (Bkrtcy., W.D.N.Y.1981), citing *Watson v. N. Y. Central R.R. Co.*, 47 N.Y. 157, 162 (1872).

█ A judgment lien is a remedy, and requires affirmative action on the part of the judgment creditor to become an interest in property. As such, the voiding of judi-

cial liens pursuant to § 522(f)(1) affects the creditor's remedy only, and not his interest in specific property.

■ A statute which affects a remedy or procedure may be applied retroactively as long as it does not interfere with any vested property rights. *See Hercules, Inc. v. South Carolina Tax Commission*, 274 S.C. 137, 262 S.E.2d 45 (1980); *see also Howard v. Allen*, 368 F.Supp. 310 (D.S.C.1973).

■ The interest held by a judgment creditor is different from that held by a mortgagee or security interest holder. While a mortgage or a security interest is a specific lien on a specific item of property, a judgment lien is a general lien upon all of the debtor's real estate. *See Weatherly v. Medlin*, 141 S.C. 290, 139 S.E. 633 (1927). Thus, a judicial lien holder does not have a property interest in a specific parcel of real estate. Unlike a mortgagee or a security interest holder, a judicial lien holder does not look to a specific piece of property from which to satisfy his debt. Instead, a judgment creditor looks to any and all property owned by the debtor at the time his judgment becomes a lien. "Hence the creditor is not interested in property as property, but only in his lien." *In Re Ashe*, 10 B.R. 97, 99 (Bkrtcy., M.D.Pa.1981), citing *Grevemeyer v. Southern Mutual Fire Insurance Co.*, 62 Pa. 340 (1867).

■ In the instant case, these judgment creditors should have been aware that at least a portion of their judgment liens could not be satisfied by execution on the debtor's homestead. S.C.Code § 15–35–820 (1976) states that "Section 15–35–810 shall not be construed so as to make final judgments in any case a lien on the real property of the judgment debtor exempt from attachment, levy, and sale by the Constitution." Article III, Section 28 of the South Carolina Constitution, as in effect at the time these mortgages and judgments were recorded, allowed the "head of any family residing in this state, a homestead in lands . . . to the value of one thousand dollars . . . ." Thus, the judgment lienholders have neither a remedy nor an expectation of a property interest to this extent.

■ Because a judgment lien affords a remedy available to the creditor which does not operate to give a judgment creditor a property interest in specific property, nor to transfer any estate in the debtor's real property to the judgment creditor, as such, the retroactive application of § 522(f)(1) does not constitute a taking of property in violation of the Fifth Amendment. *See Lattimore v. Walt's Tree Service, Inc.*, 12 B.R. 111, 114 (Bkrtcy., W.D.N.Y.1981); *Burkholder v. National Central Bank*, 11 B.R. 346 (Bkrtcy., E.D.Pa.1981); *Jenkins v. Northwest Georgia Bank*, 11 B.R. 958 (Bkrtcy., N.D.Ga.1981); *Mahoney v. Avco Financial Services*, 15 B.R. 482 (Bkrtcy., W.D.N.C.1981); *Hall v. Landmark Finance Co. of Ga.*, 13 B.R. 205 (Bkrtcy., N.D.Ga. 1981); *Stump v. Beneficial Finance Co.*, 8 B.R. 516 (Bkrtcy., D.S.D.1981); contra *see In Re Howard*, 11 B.R. 954 (Bkrtcy., N.D. Md.1981); *Lucero v. Security Industrial Bank*, 6 B.C.D. 477, 4 B.R. 659, 2 C.B.C.2nd 532 (Bkrtcy., D.Col.1980); *In re Pape*, 7 B.R. 443 (Bkrtcy., N.D.Fla.1980); *Malpeli v. Beneficial Finance Co.*, 7 B.C.D. 269, 7 B.R. 508 (Bkrtcy., N.D.Ill.1980).

Previously, this court held in *Household Finance Corp. v. Glynn*, 13 B.R. 647 (Bkrtcy., D.S.C.1981) that 11 U.S.C. § 522(f)(2) could not be applied retroactively to security interests created prior to enactment of the Bankruptcy Code. There, the court stated that the retroactive application of 11 U.S.C. § 522(f)(2) "deprives the creditor absolutely of the valid state law property interest acquired prior to the enactment of the Bankruptcy Code." *Id.* at 690.

Because of the different property interest involved, the case under consideration is distinguishable from, and does not conflict with, *Glynn*. The property interest in *Glynn* involved a security interest, which is a property interest in a specific item of property. The property interest in this case is neither a specific interest in a specific item of property, nor is it an estate in real property.

This court holds that § 522(f)(1) may be applied retroactively here without violating the Fifth Amendment of the United States Constitution.

## ORDER

For the reasons stated herein, the judicial liens held by the defendants are hereby declared void pursuant to 11 U.S.C. § 522(f)(1) to the extent of $8,464.42, the value of the debtors' equity claimed as exempt.